**Exhibit A**

**Interim DIP Order**

| | | |
|---|---|---|
| *In re* | ) | Chapter 11 |
| | ) | |
| QUESTEX MEDIA GROUP, INC, *et al.*, | ) | Case No. 09-[ *1 3 4 2 3* ] ( ) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |
| | ) | |
| | ) | |

INTERIM ORDER (I) AUTHORIZING DEBTORS TO
OBTAIN POSTPETITION FINANCING ON A SUPERPRIORITY AND
PRIMING BASIS PURSUANT TO SECTIONS 105(a), 363 AND 364 OF
THE BANKRUPTCY CODE, (II) GRANTING PRIMING LIENS AND
SUPERPRIORITY CLAIMS TO POSTPETITION LENDERS PURSUANT TO
SECTION 364(c) AND (d) OF THE BANKRUPTCY CODE, (III) AUTHORIZING
THE DEBTORS TO USE CASH COLLATERAL PURSUANT TO SECTION 363
OF THE BANKRUPTCY CODE, (IV) GRANTING ADEQUATE PROTECTION
TO PREPETITION SECURED LENDERS PURSUANT TO SECTIONS 361,
362, 363, 364 AND 507 OF THE BANKRUPTCY CODE, (V) MODIFYING THE
AUTOMATIC STAY, AND (V) PRESCRIBING FORM AND MANNER OF NOTICE
AND SCHEDULING FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001

Upon the motion, dated October [   ], 2009 (the "**Motion**") of Questex Media Group, Inc.

("**Questex Media**"), and its debtor affiliates, as debtors and debtors in possession (collectively,

"**Questex**" or the "**Debtors**"), pursuant to sections 105(a), 361, 362, 363, 364 and 507 of chapter

11 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2002, 4001 and

9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), (a) for entry of

this Order and the Final Order (as hereinafter defined) authorizing the Debtors to (i) obtain

postpetition financing, cash advances and other extensions of credit in an aggregate principal

amount of up to $15.0 million, plus accrued interest thereon, in the form of a revolving loan

facility consisting of (A) a $5.5 million principal amount tranche to be made available to the

Debtors in one or more advances as set forth in the Postpetition Financing Documents (as

defined below) upon the first practicable date following entry of this Order until the earlier of entry of the Final Order (as defined below) and a Cash Collateral Termination Event (as defined below) and (B) an additional $9.5 million principal amount tranche to be made available to the Debtors upon entry of the Final Order (collectively, the "**DIP Loans**"), pursuant to sections 105(a), 363 and 364 of the Bankruptcy Code from the Postpetition Lenders (defined below) by entering into a senior secured superpriority debtor in possession credit facility on a superpriority and priming basis (as the same may be amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "**Postpetition Credit Agreement**"),[1] substantially in the form annexed to the Motion as **Exhibit A**, among Questex Media, as borrower, and certain direct and indirect affiliates of Questex Media (including all of the Debtors), as guarantors (collectively, the "**Guarantors**" and together with Questex Media, the "**Postpetition Loan Parties**"), the lenders from time to time parties thereto (the "**Postpetition Lenders**"), Credit Suisse, as administrative agent and collateral agent (the "**Postpetition Agent**"); (ii) grant, pursuant to sections 364(c) and 364(d) of the Bankruptcy Code, priming liens and superpriority claims to and on behalf of and for the benefit of the Postpetition Lenders in all Collateral (as defined below) in accordance with the Security Documents and this Order and the Final Order to secure any and all of the Postpetition Obligations (as defined below), (iii) subject to the terms and conditions herein, use Cash Collateral (as defined below) and (iv) pending a final hearing on the Motion (the "**Final Hearing**"), obtain an emergency postpetition DIP Loan in a principal amount not to exceed $5.5 million under the Postpetition Credit Agreement to and including the date on which the Final Order is entered (the "**Interim Commitment**"), (b) requesting the provision of adequate protection to certain of the Debtors' prepetition secured lenders,

---

[1] Unless otherwise defined herein, all capitalized terms used herein shall have the meanings ascribed to such terms in the Postpetition Credit Agreement.

(c) pursuant to the Bankruptcy Code, including sections 105(a) and 362 thereof, modifying the automatic stay of section 362 of the Bankruptcy Code to permit the Postpetition Lenders to enforce their liens securing the obligations arising under the Postpetition Financing Documents and to pursue their rights and remedies thereunder, and (d) in accordance with Bankruptcy Rule 4001(c)(2), requesting that this Court schedule the Final Hearing to be held before this Court to consider entry of the Final Order as set forth in the Motion and approve notice with respect thereto; and the Court having considered the Motion and the exhibits attached thereto, including, without limitation, the Postpetition Credit Agreement; and a hearing to consider approval of the Interim Commitment having been held and concluded (the "**Interim Hearing**"); and upon all the pleadings filed with the Court and all of the proceedings held before the Court, and any and all objections to the relief requested in the Motion having been resolved or overruled by the Court; and after due deliberation and consideration and good and sufficient cause appearing therefore,

**THE COURT HEREBY FINDS AND CONCLUDES THAT:[2]**

     A.    <u>Commencement of the Cases</u>. On October [  ], 2009 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under the Bankruptcy Code commencing these chapter 11 cases. Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors have retained possession of their property and are authorized thereby, as debtors in possession, to continue the operation and management of their businesses. No request has been made for the appointment of a trustee or examiner and none has been appointed.

     B.    <u>Jurisdiction and Notice</u>. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a "core" proceeding within the meaning of 28 U.S.C. § 157(b)(2). The statutory predicates for the relief sought herein are sections 361, 362, 363 and

---

[2] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as finding of fact, pursuant to Bankruptcy Rule 7052.

364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001(b), (c) and (d) and 9014. Venue of these chapter 11 cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      The Prepetition First Lien Credit Agreement. Subject to the time limitations and other restrictions specified in paragraph 32 below, the Debtors acknowledge, admit and confirm the following as of the Petition Date:

(i)      Prepetition First Lien Credit Agreement. Pursuant to that certain First Lien Credit Agreement, dated as of May 4, 2007 (as amended, restated, amended and restated, supplemented, or otherwise modified, the "**Prepetition First Lien Credit Agreement**"), by and among Questex Media, as borrower, Questex Holdings, Inc. ("**Holdings**"), Credit Suisse, as administrative agent and collateral agent (in such capacities and together with its successors, the "**Prepetition First Lien Agent**"), and the lenders party from time to time thereto (collectively, the "**Prepetition First Lien Lenders**"), the Prepetition First Lien Lenders made loans and provided other financial accommodations to the Debtors. The Prepetition First Lien Credit Agreement provides for a term loan in the aggregate principal amount of $150.0 million (the "**Prepetition First Lien Term Loan**") and a revolving credit commitment in the aggregate principal amount of $30.0 million (the "**Prepetition First Lien Revolving Loan**").

(ii)      Prepetition Secured First Lien Obligations. As of the Petition Date, the principal amount outstanding under the Prepetition First Lien Credit Agreement was at least $178.9 million.[3] The Prepetition First Lien Lenders and the Debtors agree that this

---

[3] This principal amount includes (i) at least $30,000,000 in principal plus at least $396,986.30 in accrued and unpaid interest, as of September 30, 2009, owed under the Prepetition First Lien

principal amount plus accrued and unpaid interest, fees, costs, and expenses thereunder plus outstanding obligations under secured swap contracts with certain of the Prepetition First Lien Lenders in the approximate amount of $6,368,085, as of September 30, 2009, (collectively, including such fees, expenses, and other amounts outstanding, whether accrued or contingent, under the First Lien Financing Documents, the "**Prepetition Secured First Lien Obligations**") are due and owing by the Debtors.

(iii)     First Lien Security Agreement.  Pursuant to that certain First Lien Guarantee and Collateral Agreement, dated as of May 4, 2007 (as amended, restated, amended and restated, supplemented or otherwise modified, the "**Prepetition First Lien Security Agreement**," and together with the Prepetition First Lien Credit Agreement and all related Loan Documents (as defined therein), the "**First Lien Financing Documents**"), among Questex, Holdings, the other Debtors (collectively with Holdings and Questex Media, the "**Prepetition First Lien Loan Parties**"), and the Prepetition First Lien Agent, the Prepetition First Lien Loan Parties granted to the Prepetition First Lien Agent, for the benefit of itself and the Prepetition First Lien Lenders, valid and perfected first-priority continuing liens on and security interests (the "**Prepetition First Priority Liens**") in substantially all of the Debtors' property, including cash, accounts receivable, intellectual property, equity interests held by Holdings, Questex Media and the other grantors thereunder in certain domestic and foreign subsidiaries, all proceeds all as further described in the Prepetition First Lien Loan Documents (collectively, the "**Prepetition First Lien Collateral**"), as security for the Prepetition Secured First Lien Obligations.

---

Revolving Loan and (ii) at least $146,600,000 in principal plus at least $1,939,939.73 in accrued and unpaid interest, as of September 30, 2009, owed under the Prepetition First Lien Term Loan.

(iv)     Debtors' Stipulations and Waivers.  The First Lien Financing Documents are valid, and binding agreements and obligations of the Debtors, and the Prepetition First Priority Liens (i) constitute valid, binding, enforceable and perfected first priority security interests and liens and (ii) are not subject to avoidance, reduction, disallowance, impairment, recharacterization or subordination by the Debtors pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(v)     Prepetition Secured First Lien Obligations are Legal, Valid and Binding Obligations.  The Prepetition Secured First Lien Obligations, in the amounts set forth above, constitute the legal, valid, binding obligations of the Debtors, enforceable in accordance with their terms.  The Debtors have no objection, offset, defense or counterclaim of any kind or nature to the Prepetition Secured First Lien Obligations.  The Prepetition Secured First Lien Obligations, any amounts previously paid to or for the benefit of any Prepetition First Lien Lender or the Prepetition First Lien Agent on account thereof or with respect thereto, are not subject to avoidance, reduction, disallowance, impairment, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(vi)     Prepetition First Lien Collateral Properly Perfected.  The Prepetition First Lien Agent (on its behalf and on behalf of the Prepetition First Lien Lenders and other Secured Parties, the "**Prepetition First Lien Secured Parties**") perfected its security interests and liens in and on the Prepetition First Lien Collateral.

D.     Prepetition Second Lien Credit Agreement.  Subject to the time limitations and other restrictions specified in paragraph 32 below, the Debtors also acknowledge, admit and confirm the following as of the Petition Date:

(i) <u>Second Lien Credit Agreement</u>.  Pursuant to that certain Second Lien Credit Agreement, dated as of May 4, 2007 (as amended, restated, amended and restated, supplemented or otherwise modified, the "**<u>Prepetition Second Lien Credit Agreement</u>**"), among Questex Media, as borrower, Holdings, the lenders party from time to time thereto, (the "**<u>Prepetition Second Lien Lenders</u>**", and together with the Prepetition First Lien Lenders, the "**<u>Prepetition Secured Lenders</u>**"), Credit Suisse,[4] as administrative agent and collateral agent to the Prepetition Second Lien Lenders (in such capacities and together with its successors, the "**<u>Prepetition Second Lien Agent</u>**" and, together with the Prepetition First Lien Agent, the "**<u>Prepetition Agents</u>**"), and other parties thereto, the Prepetition Second Lien Lenders made loans and provided other financial accommodations to the Debtors.  The Prepetition Second Lien Credit Agreement provides for a term loan (the "**<u>Prepetition Second Lien Term Loan</u>**") in the aggregate principal amount of $55.0 million.

(ii) <u>Prepetition Secured Second Lien Obligations</u>.  As of the Petition Date, the principal amount outstanding under the Prepetition Second Lien Credit Agreement was approximately $55.0 million, plus accrued and unpaid interest, fees, and expenses (the "**<u>Prepetition Secured Second Lien Obligations</u>**", and together with the Prepetition Secured First Lien Obligations, the "**<u>Prepetition Secured Obligations</u>**").

(iii) <u>Second Lien Security Agreement</u>.  Pursuant to that certain Second Lien Guarantee and Collateral Agreement, dated as of May 4, 2007 (as amended, restated, amended and restated, supplemented, or otherwise modified, the "**<u>Prepetition Second Lien Security Agreement</u>**," and together with the Prepetition Second Lien Credit

---

[4] On or about June 8, 2009, Credit Suisse resigned as Prepetition Second Lien Agent and has been replaced by Wilmington Trust FSB.

Agreement and all related Loan Documents (as defined therein), the "**Second Lien Financing Documents**"), among Holdings, Questex Media, the other Debtors as guarantors (collectively, with Holdings and Questex Media, the "**Prepetition Second Lien Loan Parties**"), and Credit Suisse, as collateral agent, the Prepetition Second Lien Loan Parties granted Credit Suisse, for the benefit of itself and the Prepetition Second Lien Lenders, valid and perfected second-priority continuing liens on and security interests (the "**Prepetition Second Priority Liens**" and, together with the Prepetition First Priority Liens, the "**Prepetition Liens**") on the Prepetition First Lien Collateral all as further described in the Prepetition Second Lien Loan Documents (collectively, the "**Prepetition Second Lien Collateral**" and together with the Prepetition First Lien Collateral, the "**Prepetition Collateral**"), as security for the Prepetition Secured Second Lien Obligations.

(iv)     <u>Intercreditor Agreement</u>.  The Prepetition First Lien Agent, on behalf of the First Lien Claimholders (as such term is defined in the Intercreditor Agreement), and the Prepetition Second Lien Agent, on behalf of the Second Lien Claimholders (as such term is defined in the Intercreditor Agreement) are parties to that certain Intercreditor Agreement, dated as of May 4, 2007 as acknowledged and agreed to by Questex Media (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "**Intercreditor Agreement**") and such Intercreditor Agreement is enforceable on its terms.

E.     <u>Purpose and Necessity of Financing</u>.  An immediate and critical need exists for the Debtors to obtain new funds and use Cash Collateral in order to continue the operation of their businesses, including, without limitation, working capital and general corporate needs.  The

Debtors are unable to obtain adequate credit (i)(a) as unsecured credit or debt allowable under section 503(b)(1) of the Bankruptcy Code, (b) in a form other than as an administrative expense pursuant to section 364(a) or (b) of the Bankruptcy Code, (c) unsecured debt having the priority afforded by section 364(c)(1) of the Bankruptcy Code, or (d) debt secured only as described in section 364(c)(2) or (3) of the Bankruptcy Code, or (ii) on terms equal to or more favorable than those offered by the Prepetition Secured Lenders under the Postpetition Credit Agreement, this Order, and all other agreements, documents, notes or instruments delivered pursuant hereto or thereto or in connection therewith (collectively, with the Postpetition Credit Agreement, this Order and the Final Order, the "**Postpetition Financing Documents**").

F.    DIP Loans.  The Debtors have requested that, pursuant to the terms of the Postpetition Financing Documents, the Postpetition Lenders make the DIP Loans to the Debtors, and that the Prepetition First Lien Agent (on behalf of the Prepetition First Lien Secured Parties) consents, or does not object, to (i) the financing contemplated under the Postpetition Financing Documents and (ii) the use of the Cash Collateral, to be used by the Debtors solely in accordance with the terms of the Postpetition Financing Documents and the Budget (as defined in the Postpetition Credit Agreement), subject to permitted variances.  The ability of the Debtors to continue their businesses under chapter 11 of the Bankruptcy Code depends upon the Debtors obtaining such financing and using such Cash Collateral.  The Postpetition Lenders are willing to make such loans and advances and provide such other financial accommodations only on a superpriority and priming first priority secured basis, as more particularly described herein, pursuant to the terms and conditions of the Postpetition Financing Documents.  Accordingly, the relief requested in the Motion is necessary, essential and appropriate for the continued operation

of the Debtors' businesses, the management and preservation of their assets and properties, and is in the best interests of the Debtors, their estates and creditors.

       G.    <u>Limit on DIP Loans Prior to Final Order</u>. The Debtors have represented that, in the absence of unforeseen circumstances, they will not seek authorization from this Court to borrow, prior to entry of the Final Order, the principal amount of more than $5.5 million under the Postpetition Financing Documents.

       H.    <u>Good Faith Negotiations</u>. Based upon the record before the Court, (i) the terms of the use of the Prepetition Cash Collateral as provided in this Order and (ii) the terms of the Postpetition Financing Documents, pursuant to which the Postpetition Financing will be made or provided to the Debtors by the Postpetition Lenders, have been negotiated by the Prepetition First Lien Lenders and the Postpetition Lenders (as the case may be) at arms' length and in "good faith," as that term is used in section 364(e) of the Bankruptcy Code, and are in the best interests of the Debtors, their estates and creditors. The Postpetition Lenders are extending financing to the Debtors in good faith, and the Prepetition Agents and Prepetition First Lien Lenders are permitting the use of their Cash Collateral, in good faith, and the Postpetition Agent and Postpetition Lenders are entitled to the benefits of the provisions of section 364(e) of the Bankruptcy Code.

       I.    <u>Good Cause</u>. It is in the best interests of the Debtors' estates that they be allowed to finance their operations and use Cash Collateral under the terms and conditions set forth herein and in the Postpetition Financing Documents. The relief requested by the Motion is necessary to avoid immediate and irreparable harm to the Debtors' estates, and good, adequate and sufficient cause has been shown to justify the granting of the relief requested herein, and the immediate entry of this Order.

J.     <u>Consensual Use of Cash</u>. A majority of the Prepetition First Lien Lenders have, pursuant to the Prepetition First Lien Credit Agreement, consented to and have instructed the Prepetition First Lien Agent not to object to (i) the priming of the Prepetition First Liens by the Postpetition Liens on the terms and conditions set forth in this Order and (ii) the Debtors' use of the Cash Collateral.  Nothing herein shall be construed as a consent by the Prepetition First Lien Agent, the Prepetition First Lien Lenders, the Prepetition Second Lien Agent or the Prepetition Second Lien Lenders to the entry and terms of the Final Order or the priming with respect to Advances proposed to be made under the Final Order.  The adequate protection provided herein and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code and are necessary in order to obtain such consent or non-objection of such parties.

K.     <u>Budget</u>.  The Debtors have represented that the Budget, is achievable and will allow the Debtors to operate their chapter 11 cases as a going concern.  The Postpetition Lenders are relying on the Debtors' compliance with the Budget in accordance with the terms of the Postpetition Credit Agreement and this Order in determining to enter into the Postpetition Financing Documents and authorize the use of Cash Collateral.  A summary of the Initial Budget is attached hereto as **Exhibit B** for informational purposes.

L.     <u>Notice</u>.  Notice of the Motion, Interim Hearing and this Order has been provided to: (i) Debtors' 30 largest unsecured creditors (on a consolidated basis), (ii) the Office of the United States Trustee for the District of Delaware (the "**<u>U.S. Trustee</u>**"); (iii) the Prepetition First Lien Agent and its counsel, Weil, Gotshal & Manges LLP (Attn.: Joseph H. Smolinsky, Esq. and Elaine Stangland, Esq.); and (iv) the Prepetition Second Lien Agent and its counsel, Proskauer Rose LLP (Attn.: _____ ) (collectively, the "**<u>Notice Parties</u>**").

**BASED ON THE RECORD OF THE INTERIM HEARING, WITH APPEARANCES OF ALL INTERESTED PARTIES, THE DECLARATION OF THOMAS E. CARIDI, THE MOTION AND THE STIPULATIONS, THE COURT FINDS THAT:**

A.        Notice of the Motion, as it relates to this Order, is, under the circumstances, sufficient under the Bankruptcy Code and the Bankruptcy Rules, including, without limitation, sections 361, 362, 363 and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001(b), (c) and (d) and 9014.

B.        Good cause has been shown for the entry of this Order.  An immediate and critical need exists for the Debtors to be permitted to finance their operations and use cash collateral (the "**Cash Collateral**") of the Prepetition Secured Lenders and the other Prepetition First Lien Secured Parties to continue to operate their businesses.  Without access to the financing and Cash Collateral, the Debtors will not be able to pay their payroll and other direct operating expenses or to maintain vendor and customer support.  Among other things, entry of this Order will minimize disruption of the Debtors' business and operations and permit the Debtors to meet payroll and other operating expenses and maintain customer confidence by demonstrating the ability to maintain normal operations.  The use of Cash Collateral as contemplated hereby and by the Cash Collateral Budget (as defined below), as well as the DIP Loans, are intended by the Debtors to enable them to continue the operation of their business and maximize the value of their estates.

C.        The interim use of Cash Collateral and adequate protection arrangements authorized hereunder have been negotiated in good faith and at arm's length, and the terms of such adequate protection arrangements are fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and are supported by reasonably equivalent value and fair consideration.

D.    The Debtors have requested immediate entry of this Order pursuant to Bankruptcy Rule 4001. The permission granted herein to allow the Debtors to obtain postpetition financing and use Cash Collateral is necessary to avoid immediate and irreparable harm to the Debtors.

E.    The entry of this Order is in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest, as its implementation will, among other things, allow for the continued operation of the Debtors' existing businesses.

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1.    <u>Disposition</u>. The Motion is granted in its entirety to the extent provided herein on an interim basis. Any objections to the relief sought in the Motion that have not been previously resolved or withdrawn are hereby overruled on their merits. This Order shall become effective immediately upon its entry.

**Approval of DIP Loans and Authorization to Use Cash Collateral**

2.    <u>Borrowing Authorization</u>. The Debtors are hereby (i) authorized to enter into the Postpetition Credit Agreement, substantially in the form filed with the Court, with such modifications as permitted by this Order, and the other Postpetition Financing Documents and (ii) authorized to borrow funds, incur debt, reimbursement obligations and other obligations, grant liens, make deposits, provide guaranties and indemnities and perform their obligations solely in accordance with the terms and conditions of the Postpetition Financing Documents. The Postpetition Financing Documents may be amended, restated, supplemented or otherwise modified or the provisions thereof waived in accordance with their terms, without further order of this Court; <u>provided</u>, <u>however</u>, that notice of any (i) increase in the aggregate of the Postpetition Lenders' lending commitments, (ii) increase in the applicable interest rates, other than increases described in the Motion or in the Postpetition Financing Documents as filed with

this Court, or (iii) modification of the maturity of the obligations under the Postpetition Financing Documents, financial covenants or financial events of default that are on terms materially more onerous or burdensome to the Debtors, other than modifications described in the Motion or in the Postpetition Financing Documents as filed with this Court, shall be provided to the Notice Parties, each of which shall have five (5) days from the date of such notice within which to object in writing to such amendment, modification or supplement, and upon any such timely written objection, such amendment, modification or supplement shall only be permitted following entry of an order of this Court approving or authorizing such amendment, modification or supplement. All obligations owed to the Postpetition Agent and/or Postpetition Lenders (collectively, and solely in their respective capacities as Postpetition Agent and Postpetition Lenders and not in their capacity as lender under any other facility the "**Postpetition Secured Parties**"), under or in connection with the Postpetition Financing Documents, including, without limitation, all Obligations (as such term is defined in the Postpetition Financing Documents), loans, advances, letters of credit and other indebtedness, obligations and amounts (contingent or otherwise) owing from time to time under or in connection with the Postpetition Financing Documents, and any and all other obligations at any time incurred by any of the Debtors to any of the Postpetition Secured Parties under the Postpetition Financing Documents, are defined and referred to herein as the "**Postpetition Obligations**."

       3.       <u>Postpetition Financing Documents Valid and Binding and Enforceable Against the Debtors</u>. Upon execution and delivery of the Postpetition Financing Documents, the Postpetition Financing Documents shall constitute valid and binding obligations of the Debtors, enforceable against the Debtors in accordance with their terms; <u>provided</u>, <u>however</u>, that notwithstanding any other provision of this Order or of the other Postpetition Financing

Documents, the Debtors shall not, prior to entry of a final order approving the Postpetition Financing Documents (the "**Final Order**") or such other further orders as this Court may enter, incur Postpetition Obligations in the aggregate principal amount of more than $5.5 million. No portion of the Postpetition Obligations incurred by the Debtors during the interim period pursuant to this Order shall be used to repay any portion of the Prepetition Secured Obligations except as specifically authorized under the Order. With respect to the Postpetition Obligations, no obligation, payment, transfer or grant of security under this Order or the other Postpetition Financing Documents shall be stayed, restrained, voidable or recoverable under the Bankruptcy Code or any applicable nonbankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim.

      4.    <u>Authorization to Use Prepetition Secured Lenders' Cash Collateral</u>. Subject to the terms and conditions set forth in this Order, the Debtors are authorized, pursuant to section 363(c)(2) of the Bankruptcy Code, to use the Cash Collateral for the period of time from the date hereof until the earliest to occur of (i) the termination of the Commitments (under the Postpetition Credit Agreement) or acceleration of the Postpetition Obligations as set forth in the Postpetition Credit Agreement, (ii) this Order or the Final Order ceases to be in full force and effect, (iii) the third (3rd) day following delivery of written notice to the Debtors by the Postpetition Agent of any breach or default by the Debtors of the terms and provisions of this Order, which breach or default has not been waived by the Postpetition Lenders, (iv) the third (3rd) day following the delivery of written notice by the Prepetition First Lien Agent to the Debtors of the failure to make any payment to or for the Prepetition First Lien Agent on behalf of itself or the Prepetition First Lien Secured Parties as required by this Order; <u>provided</u>, <u>however</u>, that such payment default has not been cured within three (3) days after the delivery of such

notice, or (v) the conversion of any of the chapter 11 cases to a chapter 7 case or appointment of a trustee or examiner with expanded powers (each such event described in (i) through (v) above being a each a "**Cash Collateral Termination Event**"). The Debtors' authority to use the Prepetition Secured Lenders' Cash Collateral shall automatically terminate on a Cash Collateral Termination Event without further order or relief from the Court. The Debtors reserve all rights to seek authorization to use the Cash Collateral after a Cash Collateral Termination Event and the Prepetition First Lien Agent reserves all rights to object to such authorization.

     5.     <u>Use of Proceeds and Cash Collateral</u>. Except for the Carve-Out (as defined herein) (and subject in all respects to the provisions set forth in paragraph 14 herein and the provisions of the Postpetition Credit Agreement or in the Postpetition Credit Agreement), and subject to the execution and effectiveness of the Postpetition Credit Agreement, the Debtors are authorized to use Cash Collateral and the proceeds of the DIP Loans made under or in connection with the Postpetition Financing Documents solely as provided in this Order and in the other Postpetition Financing Documents. Except for the Carve-Out, from and after the Petition Date, amounts loaned and advanced under or in connection with the Postpetition Financing Documents and all proceeds of Collateral, including, without limitation, all of the Debtors' existing or future cash and Cash Collateral (collectively, "**Lender Funds**"), shall not, directly or indirectly, be used to pay expenses of the Debtors or otherwise disbursed except for those expenses and/or disbursements that are expressly permitted under the Postpetition Financing Documents and the Budget, subject to permitted variances. Subject to entry of the Final Order and except for the Carve-Out, no administrative claims, including fees and expenses of professionals, shall be assessed against or attributed to any of the Postpetition Secured Parties, Prepetition Agents or Prepetition Secured Lenders with respect to their respective interests in the

Collateral, as applicable, pursuant to the provisions of section 506(c) of the Bankruptcy Code or otherwise by, through or on behalf of the Debtors, without the prior written consent of the Postpetition Secured Parties, Prepetition Agents and/or Prepetition Secured Lenders, as applicable, and no such consent shall be implied from any action, inaction or acquiescence by, either with or without notice to, the Postpetition Secured Parties, Prepetition Agents or Prepetition Secured Parties, or otherwise. Except as set forth in the second sentence of this paragraph 5, the Postpetition Secured Parties have not consented or agreed to the use of Lender Funds.

6. <u>Limitations on Use of Lender Funds</u>. Notwithstanding anything herein to the contrary, no Lender Funds may be used directly or indirectly by any of the Debtors, any statutory committee of unsecured creditors in these chapter 11 cases, if one is appointed (the "**Committee**") or any other person or entity to (i) object to or contest in any manner the Postpetition Obligations or DIP Liens or the Prepetition Secured Obligations or Prepetition Liens, or to assert or prosecute any actions, claims or causes of action against any of the Postpetition Secured Parties, the Prepetition Agents or Prepetition Secured Lenders or (ii) seek authorization for any party to use any of the Cash Collateral of the Postpetition Secured Parties except as set forth in this Order or (iii) to obtain liens that are senior to, or on a parity with, the liens of the Postpetition Agent, the Postpetition Lenders and the other Postpetition Secured Parties in the Collateral or any portion thereof.

7. <u>Limitations on Use of Prepetition Secured Lenders' Cash Collateral</u>. Notwithstanding anything herein to the contrary, neither the Cash Collateral of the Prepetition Secured Lenders nor the proceeds of the Postpetition Financing may be used directly or indirectly by any of the Debtors, any Committee or any other person or entity to object to or

contest in any manner the Prepetition Secured Obligations or Prepetition Liens and the Postpetition Obligations or DIP Liens, or to assert or prosecute any actions, claims or causes of action against any of the Prepetition Agents, Prepetition Secured Lenders or Postpetition Secured Parties without the consent of the applicable Prepetition Agents, Prepetition Secured Lenders or Postpetition Secured Parties; provided, however, subject in all respects to the time limitations and other provisions specified in paragraph 32 below, that nothing herein shall limit or otherwise affect the ability of any Committee or any person or entity to investigate the Prepetition Secured Obligations or Prepetition Liens in any manner; provided, further that the aggregate amount of the fees and expenses expended by any Committee and its counsel in investigating the Prepetition Secured Obligations or Prepetition Liens may not exceed $50,000.

8.      Authority of Debtors to Enter Lockbox and Similar Agreements.  The Debtors are hereby authorized and directed to enter into any additional agreements providing for the establishment of lock boxes, blocked accounts or similar arrangements required or requested by the Postpetition Agent (or other banks or financial institutions acceptable to the Postpetition Agent) for the benefit and in favor of the Postpetition Secured Parties for purposes of facilitating cash collections from the Debtors in accordance with and subject to the terms of the Postpetition Financing Documents.

9.      Accrual of Interest.  Interest on the Postpetition Obligations shall accrue at the rates (including any applicable default rates) and shall be paid at the times as provided in the Postpetition Financing Documents.

10.     Payment of Fees in Connection with Postpetition Financing.  Any and all fees incurred, paid or required to be paid in connection with the Postpetition Financing Documents

are hereby authorized and payable as contemplated in the Motion or contained in the Postpetition Financing Documents filed with the Court.

**Granting of Priming Liens and Superpriority Claims**

11.     <u>Superpriority Claims for Postpetition Lenders</u>.  Subject to the Carve-Out (as defined herein), all Postpetition Obligations hereby constitute allowed superpriority administrative expense claims under section 364(c)(l) of the Bankruptcy Code against each of the Debtors (jointly and severally), having priority over all administrative expenses of the kind specified in, or ordered pursuant to, any provision of the Bankruptcy Code, including, without limitation, those specified in, or ordered pursuant to, sections 105, 326, 327, 328, 330, 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1113 and 1114 of the Bankruptcy Code, or otherwise (whether incurred in these chapter 11 cases or any conversion thereof to a case under chapter 7 of the Bankruptcy Code or any other proceeding related hereto or thereto), which superpriority claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof.  Notwithstanding the foregoing or anything to the contrary contained in this Interim Order or the Existing Loan Agreements and pending entry of the Final Order, the Collateral shall not include avoidance actions brought under sections 547 or 548 of the Bankruptcy Code (the "**<u>Avoidance Actions</u>**").

12.     <u>Priming and Other Liens on the Collateral</u>.  As security for the Postpetition Obligations, the Postpetition Agent is hereby granted pursuant to section 364(c)(2), (c)(3) and (d) of the Bankruptcy Code, for the sole benefit of the Postpetition Secured Parties, valid, binding, continuing, enforceable, first priority and fully perfected priming liens (the "**<u>Postpetition Liens</u>**") in the Collateral, which liens are subject only to the Carve-Out and valid, perfected, enforceable and non-avoidable liens in existence as of the Petition Date that are not primed pursuant to this Order.  Furthermore, from and after the Petition Date, the Debtors shall

not create, incur, or suffer to exist any liens of any kind or nature on any of their assets or properties except for the Postpetition Liens granted hereunder, the Adequate Protection Liens (as defined below) granted hereunder and any other liens permitted under the Postpetition Credit Agreement; provided, however, that for the avoidance of doubt and without limiting the foregoing, the Postpetition Liens shall be in all respects senior in rank and priority to any and all liens securing any Prepetition Secured Obligations, including, without limitation, any and all Adequate Protection Liens granted hereunder. The term "**Collateral**" shall include all property and assets of the Loan Parties, including without limitation all cash and cash equivalents, now owned or hereafter acquired, upon which a lien is purported to be created by any Loan Document (as defined in the Prepetition First Lien Credit Agreement or the Prepetition Second Lien Credit Agreement, as applicable), subject only to the Carve-Out, in favor of the Postpetition Agent for the benefit of the Postpetition Secured Parties without limitation, accounts receivable, inventory, machinery, equipment, leases and Real Property (as defined in the Postpetition Credit Agreement) (whether owned or leased), general intangibles (including patents, trade names and trademarks and licenses thereof), books and records of the Borrower, tax refunds, excess proceeds returned to the Borrower from letter of credit beneficiaries, and all cash and all proceeds of the foregoing; provided, however, that for the avoidance of doubt, prior to the entry of the Final Order, Collateral shall not include the proceeds of the Avoidance Actions.

13.     Other Liens.  Subject only to the Carve-Out, the Postpetition Liens shall not be (i) subordinated to or made *pari passu* with any lien that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or (ii) subordinated to or made *pari passu* with any other lien under section 364(d) of the Bankruptcy Code or otherwise.  No claim or lien having a priority superior to or *pari passu* with those granted by this Order with

respect to the Postpetition Obligations shall be granted or allowed until the indefeasible payment in full in cash and satisfaction in the manner provided in the Postpetition Financing Documents of the Postpetition Obligations.

14. _Carve-Out Expenses_. Subject to the terms and conditions contained in this paragraph 14, all liens on and security interests in Collateral granted pursuant to this Order and all superpriority administrative claims granted pursuant to this Order shall be subordinate to the following: (i) statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) plus interest at the statutory rate (without regard to the notice set forth in (iv) below); (ii) fees payable to the Clerk of this Court; (iii) fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iv) below); (iv) to the extent allowed at any time, whether by interim order, procedural order or otherwise (subject in all respects to final allowance), all unpaid fees and expenses (the "**Professional Fees**") incurred or accrued by professionals or professional firms retained by the Debtors pursuant to section 327, 328, 331, 363 of the Bankruptcy Code and any statutory committee appointed in these cases under section 327 or 1103 of the Bankruptcy Code (the "**Professional Persons**") at any time before or on the first business day following delivery by the Postpetition Agent of a Carve Out Trigger Notice (as defined below), whether allowed by the Bankruptcy Court prior to or after delivery of a Carve Out Trigger Notice; and (v) after the first Business Day following delivery by the Postpetition Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order or otherwise, the payment of Professional Fees of Professional Persons in an aggregate amount not to exceed $250,000 (the "**Post-Carve Out Trigger Notice Cap**") (which amount shall be in addition to any amounts paid or payable in items (i) through (iv) hereof); provided, however, that the Carve-Out shall not

include, apply to or be available for (a) any success fee or similar payment to any professionals or other persons payable in connection with a restructuring or asset disposition with respect to the Debtors or otherwise, or (b) any fees or expenses incurred by any party, including any Debtors or the Committee, or their respective professionals in connection with, or relating to, the prosecution of any claims, causes of action, adversary proceedings or other litigation against any of the administrative agents or lenders under the Prepetition First Lien Credit Agreement or the Second Lien Credit Agreement (the "**Carve-Out**").  For purposes of the foregoing, "**Carve Out Trigger Notice**" shall mean a written notice delivered by the Postpetition Agent or Prepetition First Lien Agent to the Borrower and its counsel, the U.S. Trustee, and lead counsel to the Committee, which notice may be delivered only after the occurrence and continuation of an Event of Default (as defined in the Postpetition Credit Agreement) under the Postpetition Credit Agreement stating that the Post-Carve Out Trigger Notice Cap has been invoked.  For the avoidance of doubt, the Carve-Out shall not include Professional Fees incurred after the earliest to occur of (i) the date that is 180 days after the Petition Date; (ii) the effective date of a confirmed chapter 11 plan for one or more of the Debtors; and (iii) the consummation of a sale of substantially all of the assets of the Debtors.  Nothing herein shall preclude any party from challenging or objecting to any fee request made by a Professional Person.

15.     <u>Reservation of Rights of Prepetition Secured Parties</u>.  Notwithstanding anything herein to the contrary, this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Prepetition Secured Parties to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection at any time, including prior to a Cash Collateral Termination Event and nothing herein shall affect the rights of any other party or entity to seek or oppose such modification of the grant

of the adequate protection provided hereby. Nothing herein shall impair the rights of any party or entity to challenge or otherwise modify the adequate protection provided herein to the Prepetition Second Lien Lenders; provided, however, that if any additional adequate protection claims, liens or other rights are awarded at any time to or for the benefit of any of the Prepetition First Lien Agent or Prepetition First Lien Lenders, such claims, liens and/or other rights shall be at all times junior in all respects to the claims and liens granted to or for the benefit of the Postpetition Secured Parties and shall not affect the priority, validity, binding nature, enforceability or perfection of any of such claims and liens granted to or for the benefit of the Postpetition Secured Parties; provided, further, however, that the foregoing is without prejudice to the right of the Debtors or any other party in interest, including the Postpetition Secured Parties, to challenge any such request.

16.     Termination of Authority to Borrow Funds.  Notwithstanding anything herein or in the other Postpetition Financing Documents, on the Maturity Date (as defined in the Postpetition Credit Agreement) of the Postpetition Credit Agreement, the Debtors shall no longer, pursuant to this Order, the other Postpetition Financing Documents, or otherwise, be authorized to borrow funds or incur indebtedness hereunder or under the other Postpetition Financing Documents or to use any proceeds of the Postpetition Obligations already received (and any obligations of the Postpetition Lenders to make loans or advances or issue letters of credit hereunder or under the other Postpetition Financing Documents automatically shall be terminated).

17.     Survival of Rights, Remedies, Benefits and Protections.  Notwithstanding anything herein or the occurrence of the Maturity Date under the Postpetition Credit Agreement, all of the rights, remedies, benefits and protections provided (i) to the Postpetition Secured

Parties under this Order and the other Postpetition Financing Documents, and (ii) to the Prepetition Agents and Prepetition Secured Lenders under this Order, shall survive the Maturity Date. Upon such Maturity Date, the principal of and all accrued interest and fees and all other Postpetition Obligations shall be immediately due and payable and the Postpetition Secured Parties shall have all other rights and remedies provided in this Order, the other Postpetition Financing Documents and applicable law.

**Additional General Provisions**

18.     Automatic Stay Modified.  The automatic stay provisions of section 362 of the Bankruptcy Code are hereby vacated and modified to the extent necessary to permit the Postpetition Secured Parties to exercise, upon the occurrence and during the continuation of any Event of Default (as defined in the Postpetition Credit Agreement), all rights and remedies provided for in the Postpetition Financing Documents, and to take any or all of the following actions without further order of or application to this Court: (a) terminate the Debtors' use of Cash Collateral and cease to make any loans or advances to the Debtors; (b) declare all Postpetition Obligations to be immediately due and payable; (c) terminate the Interim Commitment or the Total Commitment and any unfunded Commitments under the proposed Postpetition Credit Agreement; (d) set off and apply immediately any and all amounts in accounts maintained by the Debtors with any Postpetition Secured Parties against the Postpetition Obligations, and otherwise enforce rights or remedies against the Collateral in the possession of any of the Postpetition Secured Parties for application towards the Postpetition Obligations; and (e) take any other actions or exercise any other rights or remedies permitted under this Order, the other Postpetition Financing Documents or applicable law to effect the repayment and satisfaction of the Postpetition Obligations; provided, however, that any Postpetition Secured Lender shall provide five (5) business days written notice (by facsimile,

telecopy, electronic mail or otherwise) to the U.S. Trustee, counsel to the Debtors, counsel to the respective Prepetition Agents, and counsel to the Committee prior to exercising any enforcement rights or remedies in respect of the Collateral (other than the rights described in clauses (a), (b) and (c) above (to the extent they might be deemed remedies in respect of the Collateral) and other than with respect to freezing any deposit accounts or securities accounts). The Debtors and any other parties in interest may seek within the five (5) business day notice period an expedited hearing before this Court solely for the purpose of considering whether, in fact, an Event of Default has occurred and is continuing. At the expiration of such five (5) business day period, in the absence of a determination by this Court that an Event of Default has occurred or is not continuing, the Postpetition Secured Parties shall be entitled to pursue all remedies. The rights and remedies of the Postpetition Secured Parties specified herein are cumulative and not exclusive of any rights or remedies that the Postpetition Secured Parties may have under the other Postpetition Financing Documents or otherwise. Upon written notice (by facsimile, telecopy, electronic mail or otherwise) to the U.S. Trustee, counsel to the Debtors, counsel to the respective Prepetition Agents, and counsel to the Committee, nothing herein shall preclude the Postpetition Secured Lenders from seeking an order from the Bankruptcy Court authorizing the Postpetition Secured Parties to exercise any enforcement rights or remedies with respect to the Collateral on less than five (5) business days notice.

19. <u>Exercise of Rights by Postpetition Secured Parties</u>. If the Postpetition Secured Parties shall at any time exercise any of their respective rights and remedies hereunder, under the other Postpetition Financing Documents or under applicable law in order to effect payment or satisfaction of the Postpetition Obligations or to receive any amounts or remittances due hereunder or under the other Postpetition Financing Documents, including without limitation,

foreclosing upon and selling all or a portion of the Collateral, the Postpetition Secured Parties shall have the right without any further action or approval of this Court to exercise such rights and remedies as to all or such part of the Collateral as the Postpetition Secured Parties shall elect in their sole discretion, subject to the provision by the applicable Postpetition Secured Parties of the written notice as provided in the preceding paragraph. Subject to the entry of a Final Order, no holder of a lien primed by this Order or granted by the Debtors as adequate protection shall be entitled to object on the basis of the existence of any such lien to the exercise by the Postpetition Secured Parties of their respective rights and remedies under the Postpetition Financing Documents or under applicable law to effect satisfaction of the Postpetition Obligations or to receive any amounts or remittances due hereunder or under the other Postpetition Financing Documents. The Postpetition Secured Parties shall be entitled to apply the payments or proceeds of the Collateral in accordance with the provisions of this Order and the other Postpetition Financing Documents, and in no event shall any of the Postpetition Secured Parties be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral or otherwise.

20. <u>Right to Enter Property Upon Event of Default</u>. Notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies of the Postpetition Secured Parties contained in this Order or the other Postpetition Financing Documents, or otherwise available at law or in equity, and subject to the terms of the other Postpetition Financing Documents, upon written notice to the Debtors and others, as specified in paragraph 19 above, and to the landlord of any leased premises that an Event of Default (as defined in the Postpetition Credit Agreement) has occurred and is continuing under the Postpetition Credit Agreement, the Postpetition Secured Parties may, so long as an Event of

Default is continuing, enter upon any leased premises of the Debtors for the purpose of exercising any remedy with respect to Collateral located thereon and shall be entitled to all of the Debtors' rights and privileges as lessee under such lease without interference from the landlords thereunder; provided, that, the Postpetition Secured Parties shall only pay rent under such leases that first accrues after provision of the Postpetition Secured Parties' written notice referenced above and that is payable during the period of any occupancy by the Postpetition Secured Parties, calculated on a per diem basis. Nothing herein shall require the Debtors or Postpetition Secured Parties to assume any lease as a condition to the rights afforded to the Debtors or Postpetition Secured Parties in this paragraph. Furthermore, subject to entry of the Final Order, any landlord's lien, right of distraint or levy, security interest or other lien or interest that any landlord, warehouseman or landlord's mortgagee may have in any Collateral located on such leased premises is hereby subordinated to the Postpetition Liens.

21.     <u>No Waiver</u>. The failure or delay by any (i) Postpetition Secured Party to seek relief or otherwise exercise its rights and remedies under this Order or any other Postpetition Financing Documents or (ii) Prepetition Agent or Prepetition Secured Lender to exercise its rights and remedies under this Order shall not constitute a waiver of any of the rights of such Postpetition Secured Party, Prepetition Agent or Prepetition Secured Lender hereunder, thereunder or otherwise, and any single or partial exercise of such rights and remedies against any party or Collateral shall not be construed to limit any further exercise of such rights and remedies against any or all of the other party and/or Collateral.

22.     <u>Prohibition on Granting Other Claims or Liens in the Collateral</u>. Except as expressly provided in the Postpetition Financing Documents, including this Order, the Debtors shall be enjoined and prohibited at any time during the chapter 11 cases from granting claims or

liens in the Collateral or any portion thereof to any other parties pursuant to sections 364(d) or 507(b) of the Bankruptcy Code or otherwise; provided, however, and notwithstanding anything to the contrary in this Order, the statutory imposition of a materialmans', mechanics', artisans' or other lien by operation of law without further action by the Debtors shall not violate anything to the contrary in this Order.  The Debtors shall be enjoined and prohibited at any time from (i) using the Collateral except pursuant to the terms and conditions of this Order and the other Postpetition Financing Documents and (ii) applying to any court for an order authorizing the use of the Collateral except on the terms of this Order and the other Postpetition Financing Documents.

23.     Access to Properties and Inspections.  In accordance with the terms of Section 5.07 of the Postpetition Credit Agreement, the Postpetition Agent and the Postpetition Lenders under the Postpetition Financing Documents shall be permitted to visit and inspect any of the Debtors' properties, to inspect, copy and take extracts from the Debtors' financial and accounting records and to discuss the Debtors' affairs, finances and accounts with their officers and independent public accountants.

24.     Automatic Perfection of Liens.  All liens granted or authorized pursuant to this Order to or for the benefit of the Postpetition Secured Parties or the Prepetition Secured Parties (but, with respect to the Prepetition Secured Parties, subject in all respects to paragraph 32 below), whether granted by the Debtors or any non-Debtor Guarantor, shall pursuant to this Order be, and they hereby are, valid, enforceable and perfected, effective as of the Petition Date, and (notwithstanding any provisions of any agreement, instrument, document, the Uniform Commercial Code or any other relevant law or regulation of any jurisdiction) no further notice, filing or other act shall be required to effect such perfection, and all liens that may be

created upon any deposit accounts or securities accounts shall, pursuant to this Order be, and they hereby are, deemed to confer "control" for purposes of sections 8-106, 9-104 and 9-106 of the New York Uniform Commercial Code, or similar provisions found in Commercial Codes adopted by other jurisdictions, as in effect as of the date hereof in favor of the Postpetition Secured Parties, provided, however, that if the Postpetition Agent shall, in its sole discretion, choose to require the execution of and/or file (as applicable) such mortgages, financing statements, notices of liens and other similar instruments and documents, all such mortgages, financing statements, notices of liens or other similar instruments and documents shall be deemed to have been executed, filed and/or recorded nunc pro tunc at the time and on the date of the Petition Date. Each and every federal, state and local government agency or department is hereby authorized to accept the entry by this Court of this Order as evidence of the validity, enforceability and perfection on the Petition Date of the liens granted or authorized pursuant to this Order to or for the benefit of the Postpetition Secured Parties or the Prepetition Secured Parties (but, with respect to the Prepetition Secured Parties, subject in all respects to paragraph 32 below).

25. <u>Binding Nature of Agreement</u>. The provisions of this Order shall be binding upon and inure to the benefit of each of the Postpetition Secured Parties, Postpetition Agent, Prepetition Agents, Prepetition Secured Lenders and Debtors and their respective successors and assigns (including any chapter 7 trustee or other trustee or fiduciary hereafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors).

26. <u>Subsequent Reversal or Modification</u>. Based upon the findings set forth in this Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the Interim Commitment contemplated by this Order, in the event that any or all of the provisions of

this Order or any other Postpetition Financing Documents, including the Final Order, are hereafter modified, amended or vacated by a subsequent order of this or any other Court, no such modification, amendment or vacation shall affect the validity, enforceability or priority of any lien or claim authorized or created hereby or thereby or any Postpetition Obligations incurred hereunder or thereunder. Notwithstanding any such modification, amendment or vacation, any Postpetition Obligations incurred and any claim granted to the Postpetition Secured Parties hereunder or under the other Postpetition Financing Documents, including the Final Order, arising prior to the effective date of such modification, amendment or vacation shall be governed in all respects by the original provisions of this Order and the other Postpetition Financing Documents, including the Final Order, and the Postpetition Secured Parties shall be entitled to all of the rights, remedies, privileges and benefits, including the liens and priorities granted herein and therein, with respect to any such Postpetition Obligations and claim.

27. <u>Validity, Enforceability and Priority of Prepetition Claims and Liens</u>. The validity, enforceability, priority or amount of any of the claims and liens granted to or for the benefit of the Postpetition Secured Parties under this Order or any other Postpetition Financing Documents with respect to the Postpetition Obligations shall not be affected by any finding or order of this Court or any other court regarding any Prepetition Secured Lender, Prepetition First Priority Liens or Prepetition Second Priority Liens, including, without limitation, any order of this Court or any other Court invalidating any Prepetition Secured Loans, Prepetition First Priority Liens or Prepetition Second Priority Liens.

28. <u>Authority to Execute Necessary Documents and Indemnity</u>. The Debtors are authorized and directed, and the automatic stay imposed by section 362 of the Bankruptcy Code is hereby lifted to the extent necessary, to do and perform all acts, to make, execute and deliver

all instruments and documents (including, without limitation, the execution of additional security agreements, pledge agreements, control agreements, mortgages and financing statements), and shall pay fees and expenses that may be required or necessary for the Debtors performance under the Postpetition Financing Documents, including, without limitation, (i) the execution of the Postpetition Financing Documents and (ii) the payment of the fees and other expenses described in the Postpetition Financing Documents as such become due, including, without limitation, agent fees, lender fees, commitment fees, letter of credit fees and underwriting fees and reasonable attorneys', financial advisers' and accountants' fees and disbursements and fees in respect of internal auditors, all as provided for in and subject to the Postpetition Financing Documents. The fees and expenses of legal counsel and other professionals retained by the Prepetition First Lien Agent and Prepetition First Lien Lenders shall not be subject to Court approval or U.S. Trustee guidelines, and no recipient of any payment by the Debtors of such fees and expenses shall be required to file with respect thereto any interim or final fee application with the Court; provided, however, that the Prepetition First Lien Agent and the Prepetition First Lien Lenders, if applicable, shall submit copies of their professional fee invoices to counsel for the Debtors, counsel for the U.S. Trustee, and counsel for the Committee at least five (5) days in advance of payment by the Debtors of any such invoice. Such invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver by the Prepetition First Lien Agent or the Prepetition First Lien Lenders of the attorney-client privilege or of any benefits of the attorney work product doctrine. The U.S. Trustee and the Committee may object to the reasonableness of the fees, costs and expenses included in any professional fee invoice submitted

by the Prepetition First Lien Agent or the Prepetition First Lien Lenders, provided that any such objection shall be forever waived and barred unless (i) it is filed with the Court and served on counsel for the Prepetition First Lien Agent and the Prepetition First Lien Lenders no later than ten (10) days after the objecting party's receipt of the applicable professional fee invoice and (ii) it describes with particularity the items or categories of fees, costs and expenses that are the subject of the objection and provides the specific basis for the objection to each such item or category of fees, costs and expenses. Any hearing on an objection to payment of any fees, costs and expenses of the Prepetition First Lien Agent or the Prepetition First Lien Lenders set forth in a professional fee invoice shall be limited to the reasonableness or necessity of the particular items of categories of the fees, costs and expenses which are the subject of such objection. All cash payments of interest and fees payable to the Prepetition First Lien Agent and the Prepetition First Lien Lenders pursuant to this Order shall be provisional in nature, subject to final allowance in accordance with section 506(b) of the Bankruptcy Code; provided, however, that if and to the extent any such payment is challenged by a party in interest under section 506(b) of the Bankruptcy Code and ultimately not allowed under such provision, such payment may be recharacterized as a payment of principal on the Prepetition Secured First Lien Obligations. Nothing herein shall preclude the Prepetition First Lien Agent or the Prepetition First Lien Lenders from seeking additional adequate protection of their interests in the Prepetition Collateral, including without limitation the payment of all prepetition and post-petition interest accruing under the Prepetition First Lien Credit Agreement in accordance with the terms thereof, or from seeking the termination of the Debtors' use of Cash Collateral upon the occurrence of an Event of Default. Furthermore, nothing herein shall be construed as an acknowledgement or stipulation by the Prepetition First Lien Agent or the Prepetition First Lien Lenders that their

interests in the Prepetition Collateral are adequately protected pursuant to this Order or otherwise. In addition, the Debtors are hereby authorized and directed to indemnify the Postpetition Secured Parties, exclusively in their capacity as Postpetition Secured Parties and not in their capacity as lender under any other facility, against any liability arising in connection with the Postpetition Financing Documents to the extent provided in and subject to the Postpetition Financing Documents. All such fees, expenses and indemnities of the Postpetition Secured Parties shall constitute Postpetition Obligations and shall be secured by the Postpetition Liens and afforded all of the priorities and protections afforded to the Postpetition Obligations under this Order and the other Postpetition Financing Documents.

29. <u>No Setoff or Reduction</u>. The obligations of the Debtors in respect of the Postpetition Obligations, and the claims and liens granted to or for the benefit of the Postpetition Secured Parties pursuant to this Order and the other Postpetition Financing Documents, are not subject to any setoff or reduction of any kind, including, without limitation, under section 502(d) of the Bankruptcy Code and shall not be discharged by the entry of an order (a) confirming a chapter 11 plan in any of the chapter 11 cases (and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors hereby waive such discharge) or (b) converting any of the chapter 11 cases to a case under chapter 7 of the Bankruptcy Code. Under no circumstances shall any chapter 11 plan in any of these chapter 11 cases be confirmed or become effective unless such plan provides that the Postpetition Obligations shall be indefeasibly paid in full in cash and satisfied in the manner provided in the Postpetition Financing Documents on or before the effective date of such plan.

30. <u>Prohibition on Seeking Dismissal of the Chapter 11 Cases</u>. Until all obligations and indebtedness owing to the Postpetition Secured Parties shall have been indefeasibly paid in

full in cash and satisfied in the manner provided in the Postpetition Financing Documents, no Debtor shall seek an order dismissing any of the chapter 11 cases. If an order dismissing any of the chapter 11 cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349(b) of the Bankruptcy Code) that (i) the claims and liens granted pursuant to this Order to or for the benefit of the Postpetition Secured Parties shall continue in full force and effect and shall maintain their priorities as provided in this Order until all obligations in respect thereof shall have been indefeasibly paid in full in cash and satisfied in the manner provided in the Postpetition Financing Documents (and that such claims and liens shall, notwithstanding such dismissal, remain binding on all parties in interest), (ii) the claims and liens granted pursuant to this Order to or for the benefit of the Prepetition Agents and Prepetition Secured Lenders shall continue in full force and effect and shall maintain their priorities as provided in this Order (and that such claims and liens shall, notwithstanding such dismissal, remain binding on all parties in interest to the greatest extent permitted by applicable law), (iii) that prior to dismissal, the applicable Debtors shall deliver to the Postpetition Agent and record, at the Debtors' cost, financing statements, mortgages and other documentation evidencing perfected liens in the Collateral and (iv) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such claims and liens.

**Adequate Protection**

31.     Subject in all respects to the Postpetition Obligations and Postpetition Liens (which shall at all times rank senior and prior to the Prepetition Secured Claims, Prepetition Liens, Adequate Protection Liens (as defined below), Adequate Protection Claims (as defined below) and the rights of the Prepetition Agents and Prepetition Secured Lenders under this Order), the Prepetition First Lien Agent and the Prepetition First Lien Lenders are hereby

provided with the following forms of adequate protection (which the Postpetition Agent acknowledges are acceptable to it):

(a)     As adequate protection of the respective interests of the Prepetition First Lien Agent and Prepetition First Lien Lenders in the Prepetition First Lien Collateral, to the extent of any diminution in the value of the Prepetition First Lien Collateral (including Cash Collateral) from and after the Petition Date, whether as a result of the imposition of the automatic stay, priming of the Prepetition First Priority Liens, use of the Prepetition First Lien Lenders' Cash Collateral or otherwise, the Prepetition First Lien Agent, for its benefit and the benefit of the Prepetition First Lien Lenders, shall be entitled to replacement liens (the "**Adequate Protection Liens**") (which are hereby granted to the Prepetition First Lien Agent), subject and junior only to the Postpetition Liens and the Carve-Out (and to such other liens, if any, as may be senior, under applicable law, to such liens of the Prepetition First Lien Agent or Prepetition First Lien Lenders, as the case may be, in the relevant Collateral), on all Collateral; provided, however, that the Adequate Protection Liens of the Prepetition Second Lien Agent, if any, on any Collateral shall be subordinate in priority to the Adequate Protection Liens of the Prepetition First Lien Agent. Except as provided in this Order, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien on the Collateral by any order subsequently entered in the chapter 11 cases and shall be granted the benefits of paragraph 24 hereof as applicable (subject in all respects to paragraph 32 below).

(b)     Subject to the Carve-Out, as additional adequate protection of the interests of the
Prepetition First Lien Agent and the Prepetition First Lien Lenders in the
Prepetition First Lien Collateral, the Prepetition First Lien Agent and the
Prepetition First Lien Lenders shall be entitled to allowed administrative priority
claims under section 507(b) of the Bankruptcy Code (the "**Adequate Protection
Claims**") for any diminution in value of the Prepetition First Lien Collateral
(including Cash Collateral) from and after the Petition Date, whether as a result of
the imposition of the automatic stay, priming of the Prepetition Liens, use of the
Prepetition Secured Lenders' Cash Collateral or otherwise.  The Adequate
Protection Claims shall have priority over all administrative expenses of the kind
specified in, or ordered pursuant to, any provision of the Bankruptcy Code,
including, without limitation, those specified in, or ordered pursuant to,
sections 105, 326, 327, 328, 330, 503(b), 506(c), 507(a), 507(b), 546(c), 726,
1113 and 1114 of the Bankruptcy Code, or otherwise (whether incurred in the
chapter 11 cases or any conversion thereof to a case under chapter 7 of the
Bankruptcy Code or any other proceeding related hereto or thereto), provided that
(x) the Adequate Protection Claims in favor of the Prepetition Second Lien Agent
or Prepetition Second Lien Lenders, if any, shall be subordinate and junior in all
respects in right of payment and otherwise, to the Adequate Protection Claims in
favor of the Prepetition First Lien Agent and Prepetition First Lien Lenders and
(y) the Adequate Protection Claims in favor of any of the Prepetition Agents or
Prepetition Secured Lenders shall be subordinate and junior in all respects in right
of payment and otherwise, to the indefeasible payment in full in cash and

satisfaction in the manner provided in the Postpetition Financing Documents of
the Postpetition Obligations and the Carve-Out.

(c)     Subject to section 506(b) of the Bankruptcy Code, the Debtors shall, upon entry
of this Order, and on a calendar monthly basis thereafter during the term of this
Order, promptly pay in cash all accrued but unpaid reasonable costs and expenses
of the Prepetition First Lien Agent (including all reasonable fees and expenses of
professionals engaged by the Prepetition First Lien Agent) for which an invoice
was delivered to the Debtors, regardless of whether such amounts accrued prior to
the Petition Date and all without further motion, fee application or order of the
Court.

(d)     The Adequate Protection Liens granted pursuant to subparagraph (a) above,
whether granted by the Debtors or any non-Debtor Guarantor, shall be deemed to
be perfected automatically upon entry of this Order, without the necessity of the
filing of any UCC-1 financing statement, state or federal notice, mortgage or other
similar instrument or document in any state or public record or office and without
the necessity of taking possession or "control" (within the meaning of the
Uniform Commercial Code) of any Collateral.

**Release**

32.     (a)     Subject to entry of the Final Order, and with a full reservation and no waiver
of any rights of a Committee (as representative of the Debtors' estates or otherwise) or other
party in interest as provided in the following subparagraph, each Debtor in its individual capacity
hereby forever releases, waives and discharges each Prepetition First Lien Agent and Prepetition
First Lien Lender (whether in its prepetition or postpetition capacity), together with its respective
officers, directors, employees, agents, attorneys, professionals, affiliates, subsidiaries, assigns

and/or successors (collectively, the "**Released Parties**"), from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, any of the First Lien Financing Documents, any aspect of the prepetition relationship between any Debtor relating to any of the First Priority Financing Documents or any transaction contemplated thereby, on the one hand, and any or all of the Released Parties, on the other hand, or any other acts or omissions by any or all of the Released Parties in connection with any of the First Lien Financing Documents or their prepetition relationship with any Debtor or any affiliate thereof relating to any of the First Lien Financing Documents or any transaction contemplated thereby, including, without limitation, any claims or defenses as to the extent, validity, priority or perfection of the Prepetition First Liens or Prepetition Secured First Lien Obligations, "lender liability" claims and causes of action, any actions, claims or defenses under chapter 5 of the Bankruptcy Code or any other claims and causes of action and any resulting subordination or recharacterization of any payments made to the Prepetition Secured Lenders pursuant to this Order (all such claims, defenses and other actions described in this paragraph are collectively defined as the "**Claims and Defenses**"). Nothing contained in this subparagraph shall affect the rights of any Committee or any other party in interest to undertake any action with respect to, including, without limitation, any investigation or prosecution of, Claims and Defenses that is permitted in the other subparagraphs of this paragraph. For the avoidance of doubt, the Release by the Debtors approved in this paragraph shall not constitute a defense by the Prepetition First Lien Agent or any Prepetition First Lien Lenders to any action commenced by any party other than the Debtors consistent with this paragraph 32, even if such party is prosecuting a Claim and Defense that was the property of any Debtor at the time of the giving of such Release or such party is

prosecuting such claim or cause of action in the name of the Debtor or as a representative of the estate of any Debtor.

(b)     Notwithstanding anything contained herein to the contrary, the extent, validity, priority, perfection and enforceability of the Prepetition Secured First Lien Obligations, Prepetition First Priority Liens, Prepetition Secured Second Lien Obligations and Prepetition Second Priority Liens, and all acknowledgments, admissions and confirmations of the Debtors in paragraphs C and D above, are for all purposes subject to the rights of any party in interest (including the Committee as representative of the Debtors' estates), other than any Debtor, to file a complaint pursuant to Bankruptcy Rule 7001 seeking to invalidate, avoid, subordinate or otherwise challenge the Prepetition Secured First Lien Obligations, Prepetition First Priority Liens, Prepetition Secured Second Lien Obligations or Prepetition Second Priority Liens; provided, however, that any such complaint must be filed in this Court no later than the earlier of seventy-five (75) days from the Petition Date and sixty (60) days from the date of the appointment of such Committee (as part of the Final Order, the Debtors and the Prepetition First Lien Agent will be seeking to have these periods reduced to forty-five (45) days and thirty (30) days, respectively) (the "**Challenge Period**"); provided, however, that the Challenge Period may be extended either (i) by the Court pursuant to an order after a hearing and for cause shown, or (ii) as may be agreed to in writing by (a) the First Lien Agent with respect to the time to file any such complaint relating to the liens and claims arising under the First Lien Financing Documents; (b) the Second Lien Agent with respect to the time to file any such complaint relating to the liens and claims arising under the Second Lien Financing Documents. If no such complaint is filed within such time period, then any and all Claims and Defenses against any of the Released Parties shall be, without further notice to or order of the Court, deemed to have

been forever relinquished, released and waived as to such Committee and other person or entity, and if such complaint is timely filed on or before such date, any and all Claims and Defenses against any of the Released Parties shall be deemed, immediately and without further action, to have been forever relinquished, released and waived as to such Committee and other person or entity, except with respect to Claims and Defenses that are expressly asserted in such complaint.

(c)     If no such complaint as to any of the Prepetition First Lien Revolving Loan, the Prepetition First Lien Term Loan, the Prepetition First Priority Liens, the Prepetition Second Lien Term Loan, the Prepetition Second Priority Liens, respectively, or the Released Parties is filed within such time period, then, without the requirement or need to file any proof of claim with respect thereto, (i) the Prepetition Secured First Lien Obligations as to any of the Prepetition First Lien Revolving Loan or the Prepetition First Lien Term Loan, respectively, not subject to any such complaint and the Prepetition Secured Second Lien Obligations shall each constitute allowed, fully secured claims for all purposes in the chapter 11 cases and any subsequent proceedings under the Bankruptcy Code, including, without limitation, any chapter 7 proceedings if any Chapter 11 Case is converted to a case under chapter 7 of the Bankruptcy Code (each, a "**Successor Case**"), (ii) the Prepetition First Priority Liens as to any of the Prepetition First Lien Revolving Loan or the Prepetition First Lien Term Loan, respectively, not subject to any such complaint and the Prepetition Second Priority Liens shall be deemed legal, valid, binding, enforceable, perfected, not subject to subordination (except for the subordination thereof to the Postpetition Liens and as otherwise specified in this Order, the other Postpetition Financing Documents, the First Lien Financing Documents, and the Second Lien Financing Documents, as applicable), recharacterization or avoidance for all purposes in the chapter 11 cases and any Successor Case, (iii) the release of the Claims and Defenses against the Released

Parties shall be binding on all parties in interest in the chapter 11 cases and any Successor Case, and (iv) the Prepetition Secured First Lien Obligations, the Prepetition First Priority Liens, releases of the Claims and Defenses against the Released Parties, and prior payments on account of or with respect to the Prepetition Secured First Lien Obligations as to any of the Prepetition First Lien Revolving Loan or the Prepetition First Lien Term Loan, respectively, not subject to any such complaint shall not be subject to any other or further claims, cause of action, objection, contest, setoff, defense or challenge by any party in interest for any reason, including, without limitation, by any successor to or estate representative of any Debtor. Nothing in this Order shall confer or deny standing upon the Committee or any other person or entity to bring, assert, commence, continue, prosecute or litigate the Claims and Defenses against any Released Party.

33. <u>Turnover or Release of Cash Collateral not Required</u>. Notwithstanding anything herein to the contrary, this Order shall not require the Prepetition First Lien Agent or any Prepetition First Lien Lender to turn over or release to any party any Cash Collateral in its possession as of the Petition Date that is subject to set off under the Bankruptcy Code (as defined in the Prepetition First Lien Credit Agreement); <u>provided</u>, <u>that</u>, until the occurrence of a Cash Collateral Termination Event, no such Prepetition First Lien Agent or Prepetition First Lien Lender shall exercise, or seek to exercise, any such setoff rights; <u>provided</u>, <u>further</u>, <u>that</u>, all parties hereby reserve all of their rights as to whether any such setoff is valid and enforceable under the Bankruptcy Code and applicable non-bankruptcy law.

34. <u>Priority of Liens and Claims</u>. Notwithstanding anything to the contrary herein or in any other Postpetition Financing Document, or in any First Lien Financing Document or Second Lien Financing Document, the Postpetition Liens and the superpriority claims granted to the Postpetition Secured Parties hereunder and under the other Postpetition Financing

Documents are and shall be at all times (including, without limitation, after the occurrence of a Cash Collateral Termination Event) senior and prior in all respects to (a) the Adequate Protection Liens and all other liens securing any Prepetition Collateral, in all cases, whether granted under this Order, the First Lien Financing Documents, the Second Lien Financing Documents (together with the Prepetition First Priority Financing Documents, the "**Prepetition Financing Documents**") or otherwise, and (b) the Adequate Protection Claims, any other obligations in respect of adequate protection and all other claims held by the Prepetition Agents and Prepetition Secured Lenders (including, without limitation any superpriority claims in addition to the Adequate Protection Claims), in each case, whether arising under or related to the Prepetition Financing Documents, this Order or otherwise.

35.     The Prepetition First Lien Agent shall be authorized (but not required) to file a master proof of claim against the Debtors (the "**Master Proof of Claim**") on behalf of itself and the Prepetition First Lien Lenders on account of their prepetition claims arising under the First Lien Financing Documents, and the Prepetition First Lien Agent shall not be required to file a verified statement pursuant to Bankruptcy Rule 2019. The Prepetition Second Lien Agent shall also be authorized (but not required) to file a Master Proof of Claim on behalf of itself and the Prepetition Second Lien Lenders on account of their prepetition claims arising under the Second Lien Financing Documents, and the Prepetition Second Lien Agent also shall not be required to file a verified statement pursuant to Bankruptcy Rule 2019. If the Prepetition First Lien Agent or the Prepetition Second Lien Agent so files a Master Proof of Claim against the Debtors, the Prepetition First Lien Agent and each Prepetition First Lien Lender, or the Prepetition Second Lien Agent and each Prepetition Second Lien Lender, as the case may be, and each of their respective successors and assigns, shall be deemed to have filed a proof of claim in the amount

set forth opposite its name therein in respect of its claims against the Debtors arising under the First Lien Financing Documents or the Second Lien Financing Documents, and the claims of the Prepetition First Lien Agent and each Prepetition First Lien Lender, or the Prepetition Second Lien Agent and each Prepetition Second Lien Lender, as the case may be, and each of their respective successors and assigns, named in the Master Proof of Claim shall be allowed or disallowed as if such entity had filed a separate proof of claim in each chapter 11 case in the amount set forth opposite each name listed in the Master Proof of Claim. The Prepetition First Lien Agent and the Prepetition Second Lien Agent shall further be authorized to amend their respective Master Proof of Claim from time to time to, among other things, reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from any transfer of such claims. The provisions set forth in this paragraph 35 and any Master Proof of Claim filed pursuant to the terms hereof are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party in interest or their respective successors in interest, including, without limitation, the rights of the Prepetition First Lien Agent, each Prepetition First Lien Lender, the Prepetition Second Lien Agent, and each Prepetition Second Lien Lender as the holder of a claim against the Debtors under applicable law, and the numerosity requirements set forth in section 1126 of the Bankruptcy Code. Notwithstanding anything to the contrary herein, the Debtors shall cooperate with the Prepetition First Lien Agent and the Prepetition Second Lien Agent in the establishment of any bar date for the filing of claims to excuse the Prepetition First Lien Agent and Prepetition Second Lien Agent from the need to file proofs of claim in connection with the allowance of a claim by the Prepetition First Lien Agent on behalf of itself and the Prepetition First Lien

Lenders or Prepetition Second Lien Agent on behalf of itself and the Prepetition Second Lien Lenders.

36. <u>Scheduling of Final Hearing</u>. The Debtors shall, on or before October __, 2009, serve by United States mail, first class postage prepaid, copies of the Motion, this Order and a notice of the Final Hearing (the "**<u>Final Hearing Notice</u>**") to be held on [          ], 2009 at __:_0 a.m. to consider entry of the Final Order on the Notice Parties. Copies of the Motion, this Order and the Final Hearing Notice also shall be served upon all persons requesting service of papers pursuant to Bankruptcy Rule 2002 by United States mail, first class postage prepaid, within the later of one business day following the receipt of such request. The Final Hearing Notice shall state that any party in interest objecting to the entry of the Final Order shall file written objections with the Court no later than __:__.m. on [          ], 2009, which objections shall be served so that the same are received on or before such date and time by:[          ].

37. <u>Order Effective Immediately Upon Entry</u>. This Order is hereby deemed effective immediately pursuant to Federal Bankruptcy Rule 6004(h).

38. <u>Fee Letter</u>. The Fee Letter dated [          ], 2009, by and between [          ], is hereby approved in all respects.

39. The provisions of this Order, including the grant of claims and liens to or for the benefit of the Postpetition Secured Parties, the Prepetition Agents and the Prepetition Secured Lenders, and any actions taken pursuant hereto shall survive the entry of any order converting any of the chapter 11 cases to a case under chapter 7 of the Bankruptcy Code.

40. This Order shall constitute findings of fact and conclusions of law.

41.     In the event that any provision of this Order conflicts with any term of the other

Postpetition Financing Documents, this Order shall govern.

Wilmington, Delaware
Date: _____, 2009

_____
United States Bankruptcy Judge