IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| QUESTEX MEDIA GROUP, INC., et al.,[1] ) | Case No. 09-13423 (MFW) |
| ) | |
| Debtors. ) | Jointly Administered |
| ) | |
| ) | Hearing Date: October 26, 2009 at 3:00 p.m. (ET) |
| ) | Objection Deadline: October 19, 2009 at 4:00 p.m. (ET) |

## DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING (A) EMPLOYMENT AND RETENTION OF MILLER BUCKFIRE & CO., LLC AS FINANCIAL ADVISOR AND INVESTMENT BANKER *NUNC PRO TUNC* TO THE PETITION DATE AND (B) WAIVER OF CERTAIN INFORMATION REQUIREMENTS OF LOCAL RULE 2016-2

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") file this application (the "Application") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), as supplemented by Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Code for the District of Delaware (the "Local Rules"), and Local Rule 2016-2 authorizing the employment and retention of Miller Buckfire & Co., LLC ("Miller Buckfire") as financial advisor and investment banker to the Debtors *nunc pro tunc* to the Petition Date (as defined herein). In support of the Application, the Debtors rely upon and incorporate by reference the Declaration of Ronen Bojmel

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Questex Media Group, Inc. (5500); FierceMarkets, Inc. (6826); InfoTrends, Inc. (0297); InfoTrends Research Group, Inc. (9131); Oxford Communication, Inc. (0786); Oxford Publishing, Inc. (6012); QMG Holdings, Inc. (3042); Questex Brazil, LLC (3187); and Show Events, Inc. (6352). The location of the corporate headquarters for Questex Media Group, Inc. and the service address for all of the Debtors is: 275 Grove Street, Suite 2-130, Newton, Massachusetts 02466.

(the "Bojmel Declaration") attached hereto as Exhibit B. In further support of the Application, the Debtors respectfully represent as follows:

## Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought herein are sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rule 2014 and Local Rules 2014-1 and 2016-2.

## Background

4. On October 5, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the chapter 11 cases (the "Chapter 11 Cases"). No committees have been appointed. On October 6, 2009, an order was entered directing procedural consolidation and joint administration of the Chapter 11 Cases [Docket No. 26].

5. Additional information regarding the Debtors' business, capital structure, and the circumstances leading to these chapter 11 cases is contained in the *Declaration of Thomas E. Caridi, Chief Financial Officer and Executive Vice President of Questex Media Group, Inc., in Support of First Day Motions* [Docket No. 21].

## Relief Requested

6. By this Application, the Debtors seek entry of an order, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, (a) authorizing the employment and retention of

2

Miller Buckfire as financial advisor and investment banker to the Debtors in these Chapter 11 Cases, effective as of the Petition Date and pursuant to the terms and conditions of the letter agreement between the Debtors and Miller Buckfire, dated April 13, 2009 (the "Engagement Letter"), a copy of which is annexed hereto as Exhibit C and incorporated by reference herein, (b) approving the terms of Miller Buckfire's employment, including the proposed fee structure and indemnification provisions, set forth in the Engagement Letter, as modified by the Proposed Order, (c) waiving certain information requirements of Local Rule 2016-2 in connection with Miller Buckfire's employment and (d) granting such other and further relief as the Court deems appropriate.

### Miller Buckfire's Qualifications

7.  Miller Buckfire is an independent firm that provides strategic and financial advisory services in large-scale corporate restructuring transactions. Miller Buckfire is principally owned and controlled by the employees of Miller Buckfire. Miller Buckfire currently has approximately 65 employees.

8.  Miller Buckfire's professionals have extensive experience in providing financial advisory and investment banking services to financially distressed companies and to creditors, equity holders and other constituencies in reorganization proceedings and complex financial restructurings, both in- and out-of-court. For instance, Miller Buckfire's professionals are providing or have provided financial advisory, investment banking and other services in connection with the restructuring of numerous companies: Acterna Corporation; Aerovías Nacionales de Colombia S.A.; Allied Holdings, Inc.; Amtrol Inc.; Anchor Danly Company; Applied Extrusion Technologies, Inc.; AT&T Latin America; Aurora Foods Inc.; Autocam Corporation; Avado Brands, Inc.; Birch Telecom, Inc.; Black Diamond Mining Company, LLC;

Bruno's Inc.; Burlington Industries; Calpine Corporation; Cambridge Industries; Carmike Cinemas; Celotex Corporation; Centerpoint Energy; Citation Corporation; CMS Energy Corporation; Criimi Mae, Inc.; CTC Communications; Dana Corporation; Delta Air Lines, Inc.; Dow Corning Corporation; Drypers, Inc.; Dura Automotive Systems, Inc.; EaglePicher Holdings Inc.; Exide Technologies; Eurotunnel Group; Favorite Brands International Inc.; FLYi, Inc.; Foamex International; Focal Communications Corporation; FPA Medical Management; Gate Gourmet; General Growth Properties, Inc.; Grand Union Co.; Greatwide Logistics Services, Inc.; Grupo TMM; Hines Horticulture, Inc.; Horizon Natural Resources Company; Huntsman Corporation; ICG Communications; ICO Global Communication, Ltd.; IMPATH Inc.; Interstate Bakeries Corporation; J.L. French Automotive Castings; Kmart Corporation; Lear Corporation; Level (3) Communications; Laidlaw, Inc.; Loewen Group; McLeodUSA; Meridian Technologies Inc.; Mervyn's Inc.; Micro Warehouse; Mirant Corp.; Montgomery Ward & Co.; National Airlines; Oakwood Homes; Pacific Crossing Limited; Pathmark Stores, Inc.; Pegasus Satellite Communications; PennCorp Financial Group, Inc.; Pioneer Companies; PSINet; Polaroid Corporation; Polymer Group, Inc.; Progressive Molded Products Inc.; SI Corporation; The Spiegel Group; Sunbeam Corporation; Stolt-Nielsen S.A.; Stolt-Offshore S.A.; TECO Energy; Trans World Airlines; U.S. Office Products; Vulcan, Inc.; and Women First Healthcare, Inc. Miller Buckfire's professionals are also providing or have provided mergers and acquisitions advisory services in connection with whole or partial company sale transactions involving companies across a wide range of industries, including Atwood Mobile Products (Dura Corporation); Aurora Foods; Burlington Industries; Calpine Corporation; Cambridge Industries; Career Blazers; Conversent Communications; Country Road Communications; Dana

Corporation; Focal Communications; Global Valley Networks; IMPATH; Pegasus Broadcast Corporation; Pegasus Communications; PSINet; and Polaroid Corporation.

9. Since April 13, 2009, Miller Buckfire has provided the following services, among others, to the Debtors in connection with their restructuring efforts:

   a. familiarized itself with the assets and operations of the Debtors;

   b. analyzed the current liquidity and projected cash flows of the Debtors;

   c. prepared various analyses with regard to liquidity and debt capacity;

   d. examined and sought to implement potential strategic alternatives to address the liquidity restraints and capital structure issues facing the Debtors;

   e. assisted the Debtors in negotiating confidentiality agreements for parties in interest, gathering and developing due diligence information for such parties, structuring and participating in due diligence meetings and conference calls with parties in interest and their respective advisors;

   f. engaged in negotiations with the Debtors' various prepetition first lien lenders, second lien lenders, holding company lenders, earnout payment participants and stockholders regarding potential out-of-court restructuring alternatives;

   g. facilitated meetings and conference calls between the Debtors' prepetition first lien and second lien lenders in a effort to garner support and reach agreement on a consensual restructuring plan of the Debtors;

   h. participated in meetings with the Debtors' board of directors and the various parties in interest regarding both in-court and out-of-court alternatives;

   i. assisted the Debtors and their advisors with developing the process, procedures and documentation for a chapter 11 filing;

   j. provided financial advice and assistance to the Debtors in structuring and effecting the proposed debtor-in-possession financing; and

   k. identified potential interested parties as part of the preparation to conduct a 363 sale process on behalf of the Debtors.

10. In providing professional services to the Debtors, Miller Buckfire has worked closely with the Debtors' management and has become well-acquainted with the Debtors'

businesses, capital structure, financial affairs and related matters. The experience Miller Buckfire gained before the Petition Date will facilitate the provision of the services required by the Debtors in these Chapter 11 Cases. The Debtors believe that Miller Buckfire is both well qualified and uniquely able to represent them in their Chapter 11 Cases in an efficient and timely manner.

## Scope of Services

11. In accordance with the terms of the Engagement Letter, at the request and direction of the Debtors, Miller Buckfire will perform the following investment banking services, among others, to the extent they are desired or necessary:[2]

   a. provide general financial advisory and investment services, including, if the Debtors determine to undertake a Restructuring, Financing and/or Sale, advising and assisting the Debtors in structuring and effecting the financial aspects of such a transaction or transactions;

   b. provide financial advice and assistance to the Debtors in developing and seeking approval of a plan of reorganization;

   c. provide financial advice and assistance to the Debtors in structuring any new securities to be issued under a plan of reorganization;

   d. assist the Debtors and/or participate in negotiations with entities or groups affected by a plan of reorganization;

   e. participate in hearings before the Bankruptcy Court with respect to the matters upon which Miller Buckfire has provided advice, including, as relevant, coordinating with the Debtors' counsel with respect to testimony in connection therewith;

   f. assist the Debtors and/or participate in negotiations with potential Investors;

   g. provide financial advice and assistance to the Debtors in connection with a 363 Sale and identify and contact potential acquirers; and

---

[2] The description of the Engagement Letter is a summary. To the extent that this Application and the terms of the Engagement Letter are inconsistent, the terms of the Engagement Letter control. Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Engagement Letter.

h.  assist the Debtors and/or participate in negotiations with potential acquirers.

12. Miller Buckfire has stated its desire and willingness to act in these Chapter 11 Cases and to render the necessary professional services as financial advisor and investment banker for the Debtors. The Debtors require Miller Buckfire's advice and services in order to maximize the value of their estates. All of the services that Miller Buckfire has and will provide to the Debtors will be undertaken at the request of the Debtors and will be appropriately directed by the Debtors so as to avoid duplicative efforts among the professionals retained in the case.

## Professional Compensation

13. As more fully described in the Engagement Letter, and subject to the Court's approval, the Debtors have agreed to pay the following compensation to Miller Buckfire in consideration of the services to be performed in these Chapter 11 Cases:

a.  Initial Financial Advisory Fee. $500,000 due and paid upon the execution of the Engagement Letter. 100% of the Initial Financial Advisory Fee will be credited against any Transaction Fee payable to Miller Buckfire pursuant to the Engagement Letter.

b.  Monthly Advisory Fee. A Monthly Advisory Fee of $175,000 per month; provided that fifty percent (50%) of all Monthly Advisory Fees paid to Miller Buckfire beginning in July 2009 will be credited (without duplication) against any Restructuring Transaction Fee payable to Miller Buckfire pursuant to the Engagement Letter.

c.  Transaction Fee. If the Debtors consummate a Restructuring or Sale, Miller Buckfire is entitled to a Transaction Fee of $3,250,000, payable at the closing of such Restructuring or Sale.[3]

d.  DIP Financing and/or Exit Financing fee. If the Debtors obtain a written commitment for a DIP Financing and/or an Exit Financing, Miller Buckfire is entitled to receive a Financing fee of 1.00% of the aggregate amount of such commitment, which fee shall be due and payable at the signing of such commitment, provided that 50% of any such DIP Financing fee or Exit

---

[3] The Debtors, Miller Buckfire and the Debtors' Senior Lenders have agreed to reduce the Transaction Fee by $250,000, from $3,500,000 to $3,250,000.

7

Financing fee shall be credited, to the extent actually paid, against the Transaction Fee pursuant to the Engagement Letter. For purposes of clarity, if Miller Buckfire has received a DIP Financing fee, then if the DIP is converted into Exit Financing Miller Buckfire shall receive an Exit Financing fee only in respect of Exit Financing proceeds to the extent that they exceed the face amount of the DIP Financing converted into the Exit Financing.

14. Additionally, the Debtors have agreed to reimburse Miller Buckfire for its reasonable expenses incurred in connection with the provision of services, such as travel and other reasonable out-of-pocket expenses (including all reasonable fees, disbursements and other charges of Miller Buckfire's counsel).

15. Miller Buckfire has obtained valuable institutional knowledge of the Debtors' businesses and financial affairs as a result of providing services to the Debtors prior to the Petition Date. The Debtors submit that Miller Buckfire is both well qualified and uniquely able to perform these services and assist the Debtors in these Chapter 11 Cases. Moreover, the Debtors believe that without the skills and services of Miller Buckfire, their ability to reorganize would be hampered.

16. The Fee Structure is consistent with Miller Buckfire's normal and customary billing practices for comparably sized and complex cases, both in- and out-of-court, involving the services to be provided in these cases.

17. Miller Buckfire and the Debtors believe that the foregoing compensation arrangements are both reasonable and market-based. In determining the level of compensation to be paid to Miller Buckfire and its reasonableness, the Debtors compared Miller Buckfire's proposed fees with the range of investment banking fees in other large and complex chapter 11 cases. The Debtors found Miller Buckfire's proposed fees to be reasonable and within the range of other comparable transactions.

18. To induce Miller Buckfire to do business with the Debtors in bankruptcy, the compensation structure described above was established to reflect the difficulty of the extensive assignments Miller Buckfire expects to undertake and the potential for failure.

19. Pursuant to Local Rule 2016-2(d), in a motion for compensation and reimbursement of expenses, activities must be billed in tenths of an hour. Although Miller Buckfire does not charge for its services on an hourly basis, Miller Buckfire will maintain records in support of any actual and necessary costs and expenses incurred in connection with the rendering of its services in these cases. Miller Buckfire, however, requests that it be permitted to file time records in one half (.5) hour increments, as it is not the general practice of Miller Buckfire employees to keep records in tenth of an hour increments. Accordingly, by this Application, the Debtors are seeking on behalf of Miller Buckfire a waiver, pursuant to Local Rule 2016-2(g), of the requirement to bill activities in one-tenths (.1) of an hour to permit Miller Buckfire to submit its time records in half hour increments.

20. Miller Buckfire's strategic and financial expertise as well as its capital markets knowledge, financing skills, restructuring capabilities and mergers and acquisitions expertise, some or all of which may be required by the Debtors during the term of Miller Buckfire's engagement hereunder, were important factors in determining the Fee Structure, and the Debtors believe that the ultimate benefit to the Debtors of Miller Buckfire's services hereunder cannot be measured by reference to the number of hours to be expended by Miller Buckfire's professionals in the performance of such services.

21. In addition, the Fee Structure has been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Miller Buckfire and its professionals hereunder, and in the light of the fact that such commitment may foreclose

9

other opportunities for Miller Buckfire and that the actual time and commitment required of Miller Buckfire and its professionals to perform its services hereunder may vary substantially from week to week or month to month.

22. In sum, in the light of the foregoing and given the numerous issues which Miller Buckfire may be required to address in the performance of its services hereunder, Miller Buckfire's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Miller Buckfire's services for engagements of this nature both out-of-court and in a chapter 11 context, the Debtors believe that the Fee Structure is market-based and fair and reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

23. Accordingly, as more fully described below, the Debtors believe that the Court should approve Miller Buckfire's retention subject to the standard of review set forth in section 328(a) of the Bankruptcy Code and that Miller Buckfire's compensation should not be subject to any additional standard of review under section 330 of the Bankruptcy Code.

24. As set forth in the Bojmel Declaration, Miller Buckfire has not shared or agreed to share any of its compensation from the Debtors with any other person, other than as permitted by section 504 of the Bankruptcy Code.

**Indemnification**

25. The Engagement Letter further provides that the Debtors will indemnify, hold harmless and defend Miller Buckfire and its affiliates and its respective directors, officers, members, managers, shareholders, employees, agents and controlling persons and its respective successors and assigns (collectively, the "Indemnified Parties") under certain circumstances (such indemnification obligation being referred to as the "Indemnification Provisions"), which

10
DB02:8817683.1                                                                                                                    068808.1001

provisions are attached to and made a part of the Engagement Letter. Notwithstanding the Indemnification Provisions, such indemnity shall be modified to the extent set forth below (the "Modified Indemnification Provisions"):

    a. Subject to the provisions of subparagraphs (c) and (d) below, the Debtors are authorized to Indemnify, and shall indemnify, Miller Buckfire, in accordance with the Engagement Letter and to the extent permitted by applicable law, for any claim arising from, related to or in connection with Miller Buckfire's performance of the services described in the Engagement Letter;

    b. Miller Buckfire shall not be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Letter for services other than the services provided under the Engagement Letter, unless such services and the indemnification, contribution or reimbursement therefor are approved by the Court;

    c. Notwithstanding anything to the contrary in the Engagement Letter, the Debtors shall have no obligation to indemnify any person, or provide contribution or reimbursement to any person, for any claim or expense to the extent that it is (i) judicially determined (the determination having become final and no longer subject to appeal) to have arisen from that person's gross negligence or willful misconduct; (ii) for a contractual dispute in which the Debtors allege the breach of Miller Buckfire's contractual obligations under the Engagement Letter unless the Court determined that indemnification, contribution, or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which that person should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter as modified by this Order;

    d. If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in the Chapter 11 Cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing the Chapter 11 Cases, Miller Buckfire believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Letter (as modified by the Proposed Order), including without limitation the advancement of defense costs, Miller Buckfire must file an application before this Court, and the Debtors may not pay any such amounts before the entry of an order by this Court approving the payment. This subparagraph (d) is intended only to specify the period of time under

11

which the Court shall have jurisdiction over any request for fees and expenses for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify Miller Buckfire; and

e. The Engagement Letter is amended to delete the proviso to the first sentence of the third paragraph of the Indemnification Provisions.

26. The Debtors and Miller Buckfire submit that the Indemnification Provisions, as modified by the Proposed Order, are standard provisions, both in chapter 11 cases and outside chapter 11, and reflect the qualifications and limits on indemnification provisions that are customary in Delaware and other jurisdictions.

27. The Debtors and Miller Buckfire believe that the Modified Indemnification Provisions are customary and reasonable for financial advisory and investment banking engagements, both out-of-court and in chapter 11 cases. *See, e.g., In re GWLS Holdings, Inc.*, Case No. 08-12430 (PJW) (Bankr. D. Del. December 5, 2008) (authorizing retention of Miller Buckfire on similar terms); *In re Mervyn's Holdings, LLC*, Case No. 08-11586 (KG) (Bankr. D. Del. July 29, 2008) (same); *In re Hines Horticulture, Inc.*, Case No. 08-11922 (KJC) (Bankr. D. Del. August 20, 2008) (same); *In re Dura Auto. Sys., Inc.*, Case No. 06-11202 (KJC) (Bankr. D. Del. October 30, 2006) (same); *In re FLYi, Inc.*, Case No. 05-20011 (MFW) (Bankr. D. Del. January 17, 2006) (same); *In re Foamex Int'l., Inc.*, Case No 05-12685 (PJW) (Bankr. D. Del. October 17, 2005) (same); *In re Greatwide Logistics Servs., Inc.*, Case No 08-12430 (PJW) (Bankr. D. Del. October 20, 2008) (same); *In re Oakwood Homes Corp.*, Case No. 02-13396 (PJW) (Bankr. D. Del. July 21, 2003) (same); *In re CTC Commc'ns Group, Inc.*, Case No. 02-12873 (PJW) (Bankr. D. Del. Nov. 15, 2002) (same).

28. The Modified Indemnification Provisions are similar to other indemnification provisions that have been approved by this Court and other bankruptcy courts. *See, e.g., In re*

*Tropicana Entm't, LLC*, Case No. 08-10856 (KJC) (Bankr. D. Del. May 5, 2008) (authorizing indemnification of Lazard Freres & Co. LLC by debtors); *In re New Century TRS Holdings, Inc.*, Case No. 07-10416 (KJC) (Bankr. D. Del. Apr. 26, 2007) (same); *In re Comdisco, Inc.*, Case No 02-C-1174 (N.D. Ill. September 23, 2002) (affirming order authorizing indemnification of Lazard Freres & Co. LLC and Rothschild, Inc. by debtors and official committee of unsecured creditors); *In re Joan & David Halpern, Inc.*, 248 B.R. 43 (Bankr. S.D.N.Y. 2000) (overruling U.S. Trustee's objection to indemnity provision); *In re United Artists Theatre Co.*, Case No. 00-3514 (SLR) (Bankr. D. Del. Dec. 1, 2000) (authorizing indemnification of Houlihan, Lokey by debtors).

29. The terms and conditions of the Engagement Letter, including the Modified Indemnification Provisions, were negotiated by the Debtors and Miller Buckfire at arm's length and in good faith. The Debtors respectfully submit that the Modified Indemnification Provisions contained in the Engagement Letter, viewed in conjunction with the other terms of Miller Buckfire's proposed retention, are reasonable and in the best interests of the Debtors, their estates and creditors in light of the fact that the Debtors require Miller Buckfire's services for a successful result in these cases. Accordingly, as part of this Application, the Debtors request that the Court approve the Indemnification Provisions as outlined in the Engagement Letter attached hereto as Exhibit C but subject to the modifications set forth in the Proposed Order.

### Basis for Relief

30. The Debtors seek approval of the Engagement Letter, including the Fee Structure, pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including

13

on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis . . ." 11 U.S.C. § 328(a).

31. Section 328 of the Bankruptcy Code permits the compensation of professionals, including financial advisors and investment bankers, on more flexible terms that reflect the nature of their services and market conditions, which is a significant departure from prior bankruptcy practice relating to the compensation of professionals. As the United States Court of Appeals for the Fifth Circuit recognized in *In re National Gypsum Co.*, 123 F.3d 861, 862 (5th Cir. 1997) (citations omitted):

> Prior to 1978, the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. The uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants 'reasonable compensation' based on relevant factors of time and comparable costs, etc. Under present § 328 the professionals may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

32. *Id.* at 862 (internal references omitted). Owing to this inherent uncertainty, courts have approved similar arrangements that contain reasonable terms and conditions under section 328 of the Bankruptcy Code. *See, e.g., In re J.L. French Auto. Castings, Inc.*, No. 06-10119 (MFW) (Bankr. D. Del. Mar. 24, 2006); *In re CommerceConnect Media Holdings, Inc.*, Case No. 09-12765 (BLS) (Bankr. D. Del. Aug. 3, 2009).

33. Bankruptcy Rule 2014 provides, in relevant part, as follows:

> An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to section 327 . . . of the Code shall be made only on application of the trustee or committee.

FED. R. BANKR. P. 2014.

14

34. The Fee Structure appropriately reflects the nature and scope of services to be provided by Miller Buckfire, Miller Buckfire's substantial experience with respect to investment banking services and the fee structures typically utilized by Miller Buckfire and other leading investment bankers, who do not bill their clients on an hourly basis.

35. Similar fixed and contingency fee arrangements have been approved and implemented by courts in other large chapter 11 cases in this Court and other courts. *See, e.g., In re GWLS Holdings, Inc.*, Case No. 08-12430 (PJW) (Bankr. D. Del. Dec. 5, 2008) (authorizing retention of Miller Buckfire on similar terms); *In re Mervyn's Holdings, LLC*, Case No. 08-11586 (KG) (Bankr. D. Del. July 29, 2008) (same); *In re Hines Horticulture, Inc.*, Case No. 08-11922 (KJC) (Bankr. D. Del. Aug. 20, 2008) (same); *In re Dura Auto. Sys., Inc.*, Case No. 06-11202 (KJC) (Bankr. D. Del. Oct. 30, 2006) (same); *In re FLYi, Inc.*, Case No. 05-20011 (MFW) (Bankr. D. Del. Jan. 17, 2006) (same); *In re Foamex Int'l., Inc.*, Case No. 05-12685 (PJW) (Bankr. D. Del. Oct. 17, 2005) (same); *In re Oakwood Homes Corp*, Case No. 02-13396 (PJW) (Bankr. D. Del. July 21, 2003) (same); *In re CTC Commc'ns Group, Inc.*, Case No. 02-12873 (PJW) (Bankr. D. Del. Nov. 15, 2002) (same); *In re Tropicana Entm't, LLC*, Case No. 08-10856 (KJC) (Bankr. D. Del. May 5, 2008) (authorizing retention of Lazard Freres & Co. LLC by debtors); *In re Covad Commc'ns Group, Inc.*, Case No. 01-10167 (JJF) (Bankr. D. Del. Nov. 21, 2001) (authorizing retention of Houlihan Lokey with compensation subject to standard of review set forth in section 328(a)); *In re Harnischfeger Indus.*, Case No. 99-02171 (PJW) (Bankr. D. Del. Feb. 8, 2000) (authorizing retention of The Blackstone Group L.P. as investment bankers to debtors); *In re Casual Male Corp.*, Case No. 01-41404 (REG) (Bankr, S.D.N.Y. Mar. 18, 2001) (authorizing retention of Robertson Stephens, Inc., subject to section 328(a) standard of review).

36. Furthermore, under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, a change was made to section 328(a) which is highlighted in bold below:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, **on a fixed or percentage fee basis,** or on a contingent fee basis.

37. This change makes clear the ability of the Debtors to retain, with Bankruptcy Court approval, a professional on a fixed fee basis such as the Fee Structure with Miller Buckfire in these cases.

38. Notwithstanding approval of its Engagement Letter under section 328 of the Bankruptcy Code, Miller Buckfire will apply to the Court for allowance of compensation and reimbursement of expenses in accordance with the procedures set forth in the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, as those procedures may be modified or supplemented by order of this Court. Consistent with its ordinary practice and the practice of investment bankers in other chapter 11 cases whose fee arrangements are typically not hour-based, Miller Buckfire does not ordinarily maintain contemporaneous time records in one-tenth hour increments or provide or conform to a schedule of hourly rates for its professionals. Therefore, Miller Buckfire should be excused from compliance with such requirements and should be required only to maintain such time records in one half (.5) hour increments.

39. In sum, the Debtors believe that the fee structure and other terms and conditions in the Engagement Letter, including the Modified Indemnification Provision, are reasonable terms and conditions of employment and should be approved under section 328(a) of the

16

Bankruptcy Code. The fee structure appropriately reflects (a) the nature and scope of the services to be provided by Miller Buckfire in these chapter 11 cases and work already performed by Miller Buckfire prior to the retention date and (b) the fee structures typically utilized by Miller Buckfire and other leading financial advisory and investment banking firms in and out of the chapter 11 context. In particular, the Debtors believe that the proposed fee structure creates a proper balance between fixed monthly fees and contingency fees based on a successful sale and/or restructuring.

### Miller Buckfire's Disinterestedness

40. Miller Buckfire has informed the Debtors that, except as may be set forth in the Bojmel Declaration, Miller Buckfire (a) has no connection with the Debtors, their creditors, equity security holders, or other parties in interest, or their respective attorneys and accountants, the United States Trustee or any person employed in the Office of the United States Trustee, in any matter related to the Debtors and their estates, (b) does not hold any interest adverse to the Debtors' estates, and (c) believes it is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

DB02:8817683.1    068808.1001

| Date Received | Invoiced Amount | | | Amount Received | | |
|---|---|---|---|---|---|---|
| | Fee | Expenses | Total | Fee | Expenses | Total |
| 04/15/2009 | $675,000.00 | $0.00 | $675,000.00 | $675,000.00 | $0.00 | $675,000.00 |
| 05/15/2009 | $175,000.00 | $2,983.55 | $177,983.55 | $175,000.00 | $2,983.55 | $177,983.55 |
| 06/15/2009 | $175,000.00 | $7,666.43 | $182,666.43 | $175,000.00 | $7,666.43 | $182,666.43 |
| 07/15/2009 | $175,000.00 | $11,669.56 | $186,669.56 | $175,000.00 | $11,669.56 | $186,669.56 |
| 08/15/2009 | $175,000.00 | $5,217.56 | $180,217.56 | $175,000.00 | $5,217.56 | $180,217.56 |
| 09/15/2009 | $175,000.00 | $7,306.63 | $182,306.63 | $175,000.00 | $7,306.63 | $182,306.63 |

41. Prior to the Petition Date, Miller Buckfire received total initial and monthly fees of $1,550,000 for April 2009 through September 2009, pursuant to the Engagement Letter. Miller Buckfire has also received $34,843.73 for expenses incurred from April 2009 through September 2009. In total, Miller Buckfire received $1,584,843.73 prior to the Petition Date. The payments received before the Petition Date are described in more detail below:

42. The Debtors have been informed that Miller Buckfire will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new material facts or relationships are discovered or arise, Miller Buckfire will inform the Court.

### Notice

43. The Debtors shall provide notice of this Application by facsimile and/or overnight mail to: (a) the Office of the United States Trustee for the District of Delaware; (b) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) counsel to the agent for the Debtors' prepetition first lien lenders; (d) the agent for the Debtors' prepetition second lien lenders, and (e) those parties

requesting notice pursuant to Bankruptcy Rule 2002, in accordance with Local Rule 2002-1(b). The Debtors submit that no further notice need be given.

## **No Prior Request**

44. No previous application for the relief sought herein has been made to this or to any other Court.

## Conclusion

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form annexed hereto as **Exhibit A**, granting the relief requested in the Application and such other and further relief as may be just or proper.

Dated: October 10, 2009
       Newton, Massachusetts

By: _____
Tom Caridi
Chief Financial Officer and Executive Vice President