# **EXHIBIT C**

# **Engagement Letter**



Miller Buckfire & Co., LLC
153 East 53rd Street, 22nd Floor
New York, New York 10022
www.millerbuckfire.com

April 13, 2009

QMG Holdings, Inc.
Questex Media Group, Inc.
275 Grove Street
Suite 2-130
Newton, MA 02466
Attention: Kerry Gumas

Dear Kerry:

This letter agreement confirms the terms under which QMG Holdings, Inc. and Questex Media Group, Inc. (together, the "Company") has engaged Miller Buckfire & Co., LLC ("Miller Buckfire") on an exclusive basis as its financial advisor and investment banker with respect to a possible Transaction and/or Financing (each as defined below) and with respect to such other financial matters as to which the Company and Miller Buckfire may agree in writing during the term of this engagement. For purposes hereof, the term "Company" includes subsidiaries of the Company and any entity that the Company or its subsidiaries may form or invest in to consummate a Transaction and/or Financing, and shall also include any successor to or assignee of all or a portion of the assets and/or businesses of the Company whether pursuant to a Plan (as defined below) or otherwise. If appropriate in connection with performing its services for the Company hereunder, Miller Buckfire may utilize the services of one or more of its affiliates, in which case references herein to Miller Buckfire shall include such affiliates.

1. Miller Buckfire, as exclusive financial advisor and investment banker to the Company, will perform the following financial advisory and investment banking services:

    a. <u>General Financial Advisory and Investment Banking Services.</u> Miller Buckfire will:

        i. to the extent it deems necessary, appropriate and feasible, familiarize itself with the business, operations, properties, financial condition and prospects of the Company; and

        ii. if the Company determines to undertake a Transaction and/or Financing, advise and assist the Company in structuring and effecting the financial aspects of such a transaction or transactions, subject to the terms and conditions of this agreement.

b. <u>Restructuring and Sale Services</u>. If the Company pursues a Transaction, Miller Buckfire will:

   i. provide financial advice and assistance to the Company in connection with a Sale and/or in developing and seeking approval of a Restructuring plan (as the same may be modified from time to time, a "Plan"), which may be a plan under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et. seq. (the "Bankruptcy Code"), including but not limited to, reviewing the Company's business plan and financial projections, and at the Company's request, preparing an analysis of the estimated range of the going concern enterprise value of the reorganized company;

   ii. if requested by the Company, provide financial advice and assistance to the Company in structuring any new securities to be issued under the Plan;

   iii. if requested by the Company, assist the Company and/or participate in negotiations with entities or groups affected by the Plan;

   iv. in connection with a Sale, if requested by the Company, identify potential acquirors and, at the Company's request, contact such potential acquirors;

   v. in connection with a Sale, if requested by the Company, assist the Company in preparing a memorandum (with any amendments or supplements thereto, the "Sale Memorandum") to be used in soliciting potential acquirors, it being agreed that (A) the Sale Memorandum shall be based entirely upon information supplied by the Company, (B) the Company shall be solely responsible for the accuracy and completeness of the Sale Memorandum, and (C) other than as contemplated by this subparagraph (b)(v), the Sale Memorandum shall not be used, reproduced, disseminated, quoted or referred to at any time in any way, except with Miller Buckfire's prior written consent;

   vi. if requested by the Company, provide financial advice and assistance to the Company in structuring and effecting any debtor-in-possession financing (a "DIP Financing") and exit financing in connection with a Plan (an "Exit Financing"), identify potential lenders and, at the Company's request, contact such lenders;

   vii. if requested by the Company, assist the Company and/or participate in negotiations with potential acquirors; and



    viii.    participate in hearings before the bankruptcy court with respect to the matters upon which Miller Buckfire has provided advice, including, as relevant, coordinating with the Company's counsel with respect to testimony in connection therewith.

For purposes of this agreement, (i) the term "Transaction" shall mean a Restructuring, a Sale or any combination thereof; (ii) the term "Restructuring" shall mean any recapitalization or restructuring (including, without limitation, through any exchange, conversion, cancellation, forgiveness, retirement and/or a material modification or amendment to the terms, conditions or covenants thereof) of the Company's preferred equity and/or debt securities and/or other indebtedness, obligations or liabilities (including preferred stock, partnership interests, lease obligations, trade credit facilities and/or contract or tort obligations), including pursuant to a repurchase or an exchange transaction, a Plan or a solicitation of consents, waivers, acceptances or authorizations; and (iii) the term "Sale" shall mean the disposition to one or more third parties in one or a series of transactions of (x) all or substantially all of the equity securities of the Company by the security holders of the Company or (y) all or substantially all of the assets (including the assignment of any executory contracts) or businesses of the Company or its subsidiaries, in either case, including through a sale or exchange of capital stock, options or assets, a lease of assets with or without a purchase option, a merger, consolidation or other business combination, an exchange or tender offer, a recapitalization, the formation of a joint venture, partnership or similar entity, or any similar transaction.

    c.    Financing Services. If the Company pursues a Financing, Miller Buckfire will:

        i.    provide financial advice and assistance to the Company in structuring and effecting a Financing, identify potential Investors (as defined below) and, at the Company's request, contact such Investors;

        ii.    if Miller Buckfire and the Company deem it advisable, assist the Company in developing and preparing a memorandum (with any amendments or supplements thereto, the "Financing Offering Memorandum") to be used in soliciting potential Investors, it being agreed that (A) the Financing Offering Memorandum shall be based entirely upon information supplied by the Company, (B) the Company shall be solely responsible for the accuracy and completeness of the Financing Offering Memorandum, and (C) other than as contemplated by this subparagraph (c)(ii), the Financing Offering Memorandum shall not be used, reproduced, disseminated, quoted or referred to at any time in any way, except with Miller Buckfire's prior written consent; and

iii. if requested by the Company, assist the Company and/or participate in negotiations with potential Investors.

For purposes of this agreement, the term "Financing" shall mean (i) a private issuance, sale or placement of the equity, equity-linked or debt securities, instruments or obligations of the Company with one or more lenders and/or investors except to the extent issued to existing security holders of the Company in exchange for their existing securities, or (ii) any loan or other financing, including any DIP Financing or Exit Financing, or (iii) any rights offering (each such lender or investor, an "Investor").

It is understood and agreed that nothing contained herein shall constitute an expressed or implied commitment by Miller Buckfire to act in any capacity or to underwrite, place or purchase any financing or securities, which commitment shall only be set forth in a separate underwriting, placement agency or other appropriate agreement relating to the Financing.

In rendering its services to the Company hereunder, Miller Buckfire is not assuming any responsibility for the Company's underlying business decision to pursue or not to pursue any business strategy or to effect or not to effect any Transaction, Financing and/or other transaction. The Company agrees that Miller Buckfire shall not have any obligation or responsibility to provide accounting, audit, "crisis management," or business consultant services for the Company and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements, or to provide any fairness or valuation opinions or any advice or opinions with respect to solvency in connection with any transaction. The Company confirms that it will rely on its own counsel, accountants and similar expert advisors for legal, accounting, tax and other similar advice.

The Company shall make available to Miller Buckfire all information concerning the business, assets, operations, financial condition and prospects of the Company that Miller Buckfire reasonably requests in connection with the services to be performed for the Company hereunder (to the extent reasonably available) and shall provide Miller Buckfire with reasonable access to the Company's officers, directors, employees, independent accountants and other advisors and agents as Miller Buckfire shall deem appropriate. The Company represents that all information furnished by it or on its behalf to Miller Buckfire at the time so furnished, to the best of the Company's knowledge, will be accurate and complete in all material respects. The Company recognizes and confirms that in advising the Company and completing its engagement hereunder, Miller Buckfire will be using and relying on publicly available information and on data, material and other information furnished to Miller Buckfire by the Company and other parties. It is understood that in performing under this engagement Miller Buckfire may assume and rely upon the accuracy and completeness of, and is not assuming any

responsibility for independent verification of, such publicly available information and the other information so furnished.

2. Miller Buckfire's compensation for services rendered under this agreement will consist of the following cash fees:

   a. A financial advisory fee of $500,000, which shall be due and paid by the Company upon the execution of this agreement (the "Initial Fee"). The Initial Fee shall be credited against any Transaction Fee (as defined below) or Financing fee(s) payable to Miller Buckfire pursuant to subparagraphs 2(c) or 2(d) hereof.

   b. A monthly financial advisory fee of $175,000 (the "Monthly Advisory Fee"), which shall be due and paid by the Company beginning April 15, 2009 and thereafter on the 15th day of each month during the term of this engagement, provided that 50% of any Monthly Advisory Fee paid to Miller Buckfire after the third month hereof will be credited (but only once) against any Transaction Fee or Financing fee(s) payable to Miller Buckfire pursuant to subparagraphs 2(c) or 2(d) hereof.

   c. If at any time during the term of this engagement (the "Term") or within the twelve full months following the termination of this engagement (including the term of this engagement, the "Fee Period"), (x) any Transaction is consummated or (y)(1) an agreement in principle, definitive agreement or Plan to effect a Transaction is entered into and (2) concurrently therewith or at any time thereafter (including following the expiration of the Fee Period), any Transaction is consummated, Miller Buckfire shall be entitled to receive a fee (a "Transaction Fee"), contingent upon the consummation of a Transaction and payable at the closing thereof, equal to $3,500,000, subject to applicable crediting set forth herein.

   d. If at any time during the Fee Period, the Company (x) consummates any Financing or (y)(1) the Company receives and accepts written commitments for one or more Financings (the execution by a potential financing source and the Company of a commitment letter or securities purchase agreement or other definitive documentation shall be deemed to be the receipt and acceptance of such written commitment) and (2) concurrently therewith or at any time thereafter (including following the expiration of the Fee Period) any Financing is consummated, the Company will pay to Miller Buckfire the following (either as underwriting discounts, placement fees or other compensation):

      i. 1.00% of the gross proceeds of any indebtedness issued that is secured by a first lien;

ii. 2.00% of the gross proceeds of any indebtedness issued that (x) is secured by a second or more junior lien, (y) is unsecured and/or (z) is subordinated;

iii. 5.00% of the gross proceeds of any equity or equity-linked securities or obligations issued;

provided that (w) no Financing fees shall be payable in respect of Financing proceeds to the extent that such proceeds are actually funded by the Audax Group or one of its affiliates, (x) no Financing fees shall be payable in respect of Financing proceeds to the extent such proceeds are actually funded by any existing holders of debt or equity (including such holders affiliates) as of the date of this agreement (other than Audax Group or one of its affiliates), but only if such Financing is in connection with a Transaction, (y) 100% of any Financing fee(s) actually paid to Miller Buckfire will be credited (but only once) against any Transaction Fee payable to Miller Buckfire pursuant to subparagraph 2(c) hereof in respect of any Transaction consummated during the Fee Period but following the Term, and (z) 50% of any Financing fee(s) actually paid to Miller Buckfire will be credited (but only once) against any Transaction Fee payable to Miller Buckfire pursuant to subparagraph 2(c) hereof in respect of any Transaction consummated during the Term.

It is understood and agreed that if the proceeds of any such Financing are to be funded in more than one stage, the aggregate proceeds to be raised in all stages of such Financing shall be deemed to have been received, and Miller Buckfire shall be entitled to the applicable compensation hereunder calculated based on such aggregate proceeds, upon the closing date of the first stage thereof.

Notwithstanding anything to the contrary in this letter agreement, if at any time during the Fee Period, the Company obtains a written commitment for a DIP Financing and/or an Exit Financing, Miller Buckfire shall be entitled to receive a Financing fee of 1.00% of the aggregate amount of such commitment, which fee shall be due and payable at the signing of such commitment, *provided* that 50% of any such DIP Financing fee or Exit Financing fee shall be credited, to the extent actually paid, against the Transaction Fee. For purposes of clarity, if Miller Buckfire has received a DIP Financing fee, then if the DIP is converted into Exit Financing Miller Buckfire shall receive an Exit Financing fee only in respect of Exit Financing proceeds to the extent that they exceed the face amount of the DIP Financing converted into the Exit Financing.

Each party hereto acknowledges and agrees that Miller Buckfire's restructuring expertise as well as its capital markets knowledge, financing skills and mergers and acquisitions capabilities, some or all of which may be required during the

term of Miller Buckfire's engagement hereunder, were important factors in determining the amount of the various fees set forth herein, and that the ultimate benefit of Miller Buckfire's services hereunder could not be measured merely by reference to the number of hours to be expended by Miller Buckfire's professionals in the performance of such services. Each party hereto also acknowledges and agrees that the various fees set forth herein have been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Miller Buckfire and that the actual time and commitment required of Miller Buckfire and its professionals to perform its services hereunder may vary substantially from week to week or month to month, creating "peak load" issues for the firm. In addition, given the numerous issues with Miller Buckfire's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Miller Buckfire's services for engagements of this nature in an out-of-court context, each party hereto agrees that the fee and expense arrangements hereunder are reasonable under all applicable legal standards. In addition, the Company and Miller Buckfire acknowledge and agree that more than one fee may be payable to Miller Buckfire under subparagraphs 2(c) and/or 2(d) hereof in connection with any single transaction or a series of transactions, it being understood and agreed that (i) if more than one fee becomes so payable to Miller Buckfire in connection with a series of transactions, each such fee shall be paid to Miller Buckfire and (ii) if more than one fee becomes so payable to Miller Buckfire in connection with a single transaction, the highest of such fees shall be paid to Miller Buckfire.

3. In addition to any fees payable by the Company to Miller Buckfire hereunder, the Company shall, whether or not any transaction contemplated by this agreement shall be proposed or consummated, reimburse Miller Buckfire on a monthly basis for its travel and other reasonable out-of-pocket expenses incurred in connection with, or arising out of Miller Buckfire's activities under or contemplated by this engagement or in the enforcement of Miller Buckfire's rights hereunder, including all fees, disbursements and other charges of counsel to be retained by Miller Buckfire (without the requirement that the retention of such counsel be approved by the Bankruptcy Court) and of other consultants and advisors retained by Miller Buckfire with the Company's consent. The Company shall also reimburse Miller Buckfire, at such times as Miller Buckfire shall request, for any sales, use or similar taxes (including additions to such taxes, if any) arising in connection with any matter referred to or contemplated by this engagement. Such reimbursements shall be made promptly upon submission by Miller Buckfire of statements for such expenses.

4. The Company agrees to indemnify Miller Buckfire and certain related persons in accordance with the indemnification provisions ("Indemnification Provisions") attached to this agreement. Such Indemnification Provisions are an integral part of this agreement, and the terms thereof are incorporated by reference herein. Such Indemnification Provisions shall survive any termination or completion of Miller Buckfire's engagement hereunder.

5. The Company agrees that none of Miller Buckfire, its affiliates or their respective directors, officers, members, managers, agents, employees and controlling persons, or any of their respective successors or assigns ("Covered Persons") shall have any liability to the Company or any person asserting claims on behalf of the Company or in the Company's right for or in connection with this engagement or any transactions or conduct in connection therewith except for losses, claims, damages, liabilities or expenses incurred by the Company which are finally judicially determined to have resulted primarily from the gross negligence or willful misconduct (including bad faith and self dealing) of such Covered Person.

6. This agreement and Miller Buckfire's engagement hereunder may be terminated by either the Company or Miller Buckfire at any time, upon prior written notice thereof to the other party; provided, however, that (a) termination of Miller Buckfire's engagement hereunder shall not affect the Company's continuing obligation to indemnify Miller Buckfire and certain related persons as provided for in this agreement, and its continuing obligations and agreements under paragraphs 5 and 7 hereof, (b) notwithstanding any such termination, Miller Buckfire shall be entitled to the full fees in the amounts and at the times provided for in paragraph 2 hereof and (c) any termination of Miller Buckfire's engagement hereunder shall not affect the Company's obligation to reimburse expenses accruing prior to such termination to the extent provided in paragraph 3 hereof.

7. Miller Buckfire has been retained under this agreement as an independent contractor with no fiduciary or agency relation to the Company or to any other party. The advice (oral or written) rendered by Miller Buckfire pursuant to this agreement is intended solely for the benefit and use of the Board of Directors of the Company in considering the matters to which this agreement relates, and the Company agrees that such advice may not be relied upon by any other person or entity, used for any other purpose or reproduced, disseminated, quoted or referred to at any time, in any manner for any purpose, nor shall any public references to Miller Buckfire be made by the Company, without the prior written consent of Miller Buckfire.

8. Without the prior written consent of the Company, Miller Buckfire shall not (a) have the right to place advertisements in financial and other newspapers and journals describing its services to the Company hereunder or (b) otherwise publicly disclose the engagement by the Company hereunder.

9. This agreement shall be deemed to be made in New York. This agreement and all controversies arising from or relating to performance of this agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without giving effect to such state's rules concerning conflicts of laws that might provide for any other choice of law. The Company hereby irrevocably consents to personal jurisdiction in the Supreme Court of the State of New York in New York County, Commercial Part, or any Federal court sitting in the Southern District of New York for the purposes of any suit, action or other

proceeding arising out of this agreement or any of the agreements or transactions contemplated hereby, which is brought by or against the Company, hereby waives any objection to venue with respect thereto, and hereby agrees that all claims in respect of any such suit, action or proceeding shall be heard and determined in any such court, and that such courts shall have exclusive jurisdiction over any claims arising out of or relating to such agreements or transactions; provided that in the event that the Company becomes a debtor under chapter 11 of the Bankruptcy Code, during any such case, any such claims may also be heard and determined in the Bankruptcy Court (as defined below). The Company hereby irrevocably consents to the service of process of any of the aforementioned courts in any such suit, action or proceeding by the mailing of copies thereof by registered or certified mail, postage prepaid, to the Company at its address set forth above, such service to become effective ten (10) days after such mailing. ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM OR ACTION ARISING OUT OF THIS AGREEMENT OR CONDUCT IN CONNECTION WITH MILLER BUCKFIRE'S ENGAGEMENT IS HEREBY WAIVED.

10. This agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same instrument. This agreement shall be binding upon Miller Buckfire and the Company and their respective successors and assigns (including, in the case of the Company, any successor to all or a portion of the assets and/or the businesses of the Company under a Plan). This agreement is not intended to confer any rights upon any shareholder, creditor, owner or partner of the Company, or any other person or entity not a party hereto other than the indemnified persons referenced in the Indemnification Provisions contained herein and the Covered Persons referenced above. This agreement (including the Indemnification Provisions) embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof. If any provision of this agreement is determined to be invalid or unenforceable in any respect, such determination will not affect the agreement in any other respect, which will remain in full force and effect. No waiver, amendment or other modification of this agreement shall be effective unless in writing and signed by each party to be bound thereby.

11. The Company does not appear on the Specially Designated Nationals and Blocked Persons List of the Office of Foreign Assets Control of the United States Department of the Treasury, nor is it a prohibited party according to other U.S. government regulatory or enforcement agencies.

12. The Company hereby acknowledges that affiliates of Miller Buckfire engage in the hedge fund and/or principal investment business, which affiliates are separated by ethical walls to prevent the improper sharing of client information. The Company hereby acknowledges and agrees that such affiliates may from time to time have a long or short position in, buy and sell or otherwise effect transactions for their own accounts or for the accounts of investment pools managed by them in the

securities, loans or other obligations or instruments of the Company or those of other companies or entities so long as the personnel involved in performing such activities have not received access to the Company's confidential information from Miller Buckfire.

13. In the event that the Company becomes a debtor under chapter 11 of the Bankruptcy Code, the Company shall apply promptly to the bankruptcy court having jurisdiction over the chapter 11 case or cases (the "Bankruptcy Court") for the approval pursuant to sections 327(a) and 328(a) of the Bankruptcy Code of this agreement and Miller Buckfire's retention by the Company under the terms of this agreement, subject only to the standard of review provided for in Section 328(a) of the Bankruptcy Code, and not subject to the standard of review under section 330 of the Bankruptcy Code or any other standard of review, and shall use its best efforts to obtain Bankruptcy Court authorization thereof. The Company shall supply Miller Buckfire and its counsel with a draft of such application and the proposed order authorizing Miller Buckfire's retention that is proposed to be submitted to the Bankruptcy Court sufficiently in advance of the filing of such application or the submission of such order, as the case may be, to enable Miller Buckfire and its counsel to review and comment thereon. Miller Buckfire shall have no obligation to provide any services under this agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless Miller Buckfire's retention under the terms of this agreement is approved under Section 328(a) of the Bankruptcy Code by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is acceptable to Miller Buckfire in all respects. Miller Buckfire acknowledges that in the event that the Bankruptcy Court approves its retention by the Company pursuant to the application process described in this paragraph 13, payment of Miller Buckfire's fees and expenses shall be subject to (i) the jurisdiction and approval of the Bankruptcy Court under Section 328(a) of the Bankruptcy Code and any order approving Miller Buckfire's retention, (ii) any applicable fee and expense guidelines and/or orders and (iii) any requirements governing interim and final fee applications. In the event that the Company becomes a debtor under the Bankruptcy Code and Miller Buckfire's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses of Miller Buckfire hereunder (including, without limitation, the fees and expenses of Miller Buckfire's counsel) as promptly as practicable in accordance with the terms hereof. Prior to commencing a chapter 11 case, the Company shall pay all undisputed amounts theretofore due and payable to Miller Buckfire in cash.

In any such chapter 11 case or cases, the Company agrees to seek approval of Miller Buckfire's post-petition compensation as set forth herein and payments made pursuant to the expense reimbursement and indemnification provisions of this Agreement (i) as expenses of administration under Sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code and (ii) as fees, expenses and compensation entitled to the benefits of any "carve-outs" for professional fees and expenses

(which carve-outs shall be adequate to enable the Company to pay promptly Miller Buckfire the compensation and expense reimbursement contemplated hereby taking into account the Company's obligations to other professionals entitled to the benefit of the carve-outs) in effect in such cases pursuant to one or more financing orders entered by the Bankruptcy Court. The Company shall use its best efforts to ensure that any cash collateral order, debtor-in-possession financing order and/or similar order entered in such chapter 11 case or cases (a) permits the use of cash collateral and financing proceeds for the full and prompt payment of all of Miller Buckfire's fees and expenses contemplated hereby (including, without limitation, all fees contingent upon the occurrence of transactions), and (b) contains the agreements by the lenders (or parties whose cash collateral is being used) that Miller Buckfire's fees and expenses shall be paid at the times and from the sources specified herein.

We are pleased to accept this engagement and look forward to working with the Company. Please confirm that the foregoing is in accordance with your understanding by signing and returning to us the enclosed duplicate of this letter, which shall thereupon constitute a binding agreement between Miller Buckfire and the Company.

Very truly yours,

MILLER BUCKFIRE & CO., LLC

By: _____
Name: Ronen Bojmel
Title: Managing Director


Accepted and Agreed to:

QMG HOLDINGS, INC.
QUESTEX MEDIA GROUP, INC.

By: _____
Name: Kerry Gumas
Title: Chief Executive Officer

## INDEMNIFICATION PROVISIONS

In connection with the engagement of Miller Buckfire & Co., LLC ("Miller Buckfire") as financial advisor to QMG Holdings, Inc. and Questex Media Group, Inc., the Company hereby agrees to indemnify and hold harmless Miller Buckfire and its affiliates, their respective directors, officers, members, managers, agents, employees and controlling persons, and each of their respective successors and assigns (collectively, the "indemnified persons"), to the full extent lawful, from and against all losses, claims, damages, liabilities and expenses incurred by them which (A) are related to or arise out of (i) actions or alleged actions taken or omitted to be taken (including any untrue statements made or any statements omitted to be made) by the Company or (ii) actions or alleged actions taken or omitted to be taken by an indemnified person with the Company's consent or in conformity with the Company's actions or omissions or (B) are otherwise related to or arise out of Miller Buckfire's activities under Miller Buckfire's engagement. The Company will not be responsible, however, for any losses, claims, damages, liabilities or expenses pursuant to clause (B) of the preceding sentence which are finally judicially determined to have resulted primarily from the gross negligence or willful misconduct (including bad faith and self dealing) of the person seeking indemnification hereunder. For purposes of these indemnification provisions, the term the "Company" has the meaning set forth in the engagement letter, dated as of April 13, 2009, between Miller Buckfire and QMG Holdings, Inc. and Questex Media Group, Inc., of which these indemnification provisions are an integral part.

After receipt by an indemnified person of notice of any complaint or the commencement of any action or proceeding with respect to which indemnification is being sought hereunder, such person will notify the Company in writing of such complaint or of the commencement of such action or proceeding, but failure so to notify the Company will relieve the Company from any liability which the Company may have hereunder only if, and to the extent that such failure results in the forfeiture by the Company of substantial rights and defenses, and will not in any event relieve the Company from any other obligation or liability that the Company may have to any indemnified person otherwise than under these indemnification provisions. If the Company so elects or is requested by such indemnified person, the Company will assume the defense of such action or proceeding, including the employment of counsel reasonably satisfactory to Miller Buckfire and the payment of the fees and disbursements of such counsel. In the event, however, such indemnified person reasonably determines in its judgment that having common counsel would present such counsel with a conflict of interest or if the defendants in, or targets of, any such action or proceeding include both an indemnified person and the Company, and such indemnified person reasonably concludes that there may be legal defenses available to it or other indemnified persons that are different from or in addition to those available to the Company, or if the Company fails to assume the defense of the action or proceeding or to employ counsel reasonably satisfactory to such indemnified person, in either case in a timely manner, then such indemnified person may employ separate counsel to represent or defend it in any such action or proceeding and the Company will pay the fees and disbursements of such counsel; provided, however, that the Company will not be required to pay the fees and disbursements of more than one separate counsel (in addition to local counsel) for all indemnified persons in any jurisdiction in any single action or proceeding. In any action or proceeding the defense of which the Company assumes, the indemnified person will have the right to participate in such litigation and to retain its own counsel at such indemnified person's own expense. The Company further agrees that it will not, without the prior written consent of Miller Buckfire, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not Miller Buckfire or any other indemnified person is an actual or potential party to such claim, action, suit or proceeding) unless such settlement, compromise or consent includes an unconditional release of Miller Buckfire and each other indemnified person hereunder from all liability arising out of such claim, action, suit or proceeding.

The Company agrees that if any indemnification sought by an indemnified person pursuant to these indemnification provisions is held by a court to be unavailable for any reason other than as specified in the second sentence of the first paragraph of these indemnification provisions, then (whether or not Miller Buckfire is the indemnified person), the Company and Miller Buckfire will contribute to the losses, claims, damages, liabilities and expenses for which such indemnification is held unavailable (i) in such proportion as is appropriate to reflect the relative benefits to the Company, on the one hand, and Miller Buckfire, on the other hand, in connection with Miller Buckfire's engagement referred to above, or (ii) if the allocation provided by clause (i) above is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (i), but also the relative fault of the Company, on the one hand, and Miller Buckfire, on the other hand, as well as any other relevant equitable considerations; provided however, that in any event the aggregate contribution of all indemnified persons, including Miller Buckfire, to all losses, claims, damages, liabilities and expenses with respect to which contribution is

available hereunder will not exceed the amount of fees actually received by Miller Buckfire from the Company pursuant to Miller Buckfire's engagement referred to above. It is hereby agreed that for purposes of this paragraph, the relative benefits to the Company, on the one hand, and Miller Buckfire, on the other hand, with respect to Miller Buckfire's engagement shall be deemed to be in the same proportion as (i) the total value paid or proposed to be paid or received by the Company or the Company's stockholders, claims holders or contract parties, as the case may be, pursuant to the transaction, whether or not consummated, for which Miller Buckfire is engaged to render financial advisory services, bears to (ii) the fee paid or proposed to be paid to Miller Buckfire in connection with such engagement. It is agreed that it would not be just and equitable if contribution pursuant to this paragraph were determined by pro rata allocation or by any other method which does not take into account the considerations referred to in this paragraph.

The Company further agrees that it will promptly reimburse Miller Buckfire and any other indemnified person hereunder for all expenses (including fees and disbursements of counsel) as they are incurred by Miller Buckfire or such other indemnified person in connection with investigating, preparing for or defending, or providing evidence in, any pending or threatened action, claim, suit or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not Miller Buckfire or any other indemnified person is a party) and in enforcing these indemnification provisions.

The Company's indemnity, contribution, reimbursement and other obligations under these indemnification provisions shall be in addition to any liability that the Company may otherwise have, at common law or otherwise, and shall be binding on the Company's successors and assigns.

Solely for purposes of enforcing these indemnification provisions, the Company hereby consents to personal jurisdiction, service and venue in any court in which any claim or proceeding which is subject to, or which may give rise to a claim for indemnification or contribution under, these indemnification provisions is brought against Miller Buckfire or any other indemnified person.

These indemnification provisions shall apply to the above-mentioned engagement, activities relating to the engagement occurring prior to the date hereof, and any subsequent modification of or amendment to such engagement, and shall remain in full force and effect following the completion or termination of Miller Buckfire's engagement.