# EXHIBIT A

## Bidding Procedures

# BIDDING PROCEDURES[1]

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed by Questex Media Group, Inc. et al., (collectively, the "Debtors") with respect to the sale of the assets and operations (the "Purchased Assets and Transferred Equity Interests") of the Debtors (the "Transaction"). It is contemplated that the Transaction will be implemented through a purchase agreement (the "Asset Purchase Agreement") with QMG Acquisition LLC, a Delaware Limited Liability Company (the "Purchaser"), subject to the receipt of higher and better bids according to these Bidding Procedures.

## Important Dates

- **October 19, 2009:** Bidding Procedures Objection Deadline

- **October 26, 2009:** Date of Bidding Procedures Hearing

- **October 28, 2009:** Preliminary Non-Binding Bid and Proof of Financing Deadline

- **October 30, 2009:** Debtors to send Notice to All Contract Counterparties

- **October 30, 2009:** Debtors to send Bidding Procedures Notice

- **November 17, 2009:** Cure Amount Objection Deadline

- **November 17, 2009:** Deadline to file and serve objections to relief requested at Sale Hearing

- **November 17, 2009:** Deadline for counterparties to Purchased Contracts to object to assignment

- **November 18, 2009:** Deadline to submit Bid to be considered for the Auction

- **November 20, 2009:** Date of Auction

- **November 23, 2009:** Debtors to file notice of Successful Bidder and Contract Assignment Notices

- **November 24, 2009:** Date of Sale Hearing

---

[1] Capitalized terms used but not defined herein shall have the meanings set forth in the motion to approve these Bidding Procedures (the "Bidding Procedures Motion").

## Marketing Process

### Contact Parties

The Debtors, in consultation with their investment banker Miller Buckfire, have developed a list of parties who the Debtors believe may potentially be interested in and who the Debtors reasonably believe would have the financial resources to consummate a competing Transaction to that of the Purchaser (a "Competing Transaction"), which list includes both potential strategic investors and potential financial investors (each, individually, a "Contact Party", and collectively, the "Contact Parties"). The Debtors will continue to discuss and may supplement the list of Contact Parties throughout the marketing process, as appropriate.

The Debtors shall distribute to each Contact Party an "Information Package," comprising:

(a)     A cover letter;

(b)     a copy of these Bidding Procedures; and

(c)     A copy of the confidentiality agreement attached hereto as <u>Exhibit 1</u> (the "Confidentiality Agreement").

### Access to Diligence Materials

To participate in the bidding process and to receive a copy of the Debtors' offering memorandum, a party must submit to the Debtors *an executed Confidentiality Agreement*. To gain access to a virtual data room containing all diligence materials previously given to the Purchaser, the Debtors may, in their sole discretion and in the exercise of their business judgment, require that such parties demonstrate the legitimacy of their interest by, among other things, requiring them to (a) submit a non-binding letter of intent signed by an executive or principal of the bidding party and (b) provide proof of access to funds and/or committed capital sufficient to finance the proposed transaction. The "material information" to be provided to such qualified parties will be information that the Debtors reasonably believe is appropriate in light of the Debtors' need to protect their trade secrets and confidential research, development, and commercial information.

## Auction Qualification Process

In order for any Alternative Transaction to be a qualified bid (each a "Qualified Bid"), it must be:

(a)     in writing;

(b)     received by Purchaser and the Sellers and Committee at their respective addresses set forth in Section 13.8 of the Asset Purchase Agreement no later than the deadline for submitting an Alternative Transaction established by the Bidding Procedures Order (the "Bid Deadline");

(c)     a firm, unconditional bid to purchase all or part of the Purchased Assets and Transferred Equity Interests, not subject to any contingencies as to the validity, effectiveness and/or binding nature of the offer, including, without limitation, further due diligence review or financing;

(d)     a firm bid that yields an amount greater than the Purchase Price, when taken together with all other "partial" or "lot" bids;

(e)     accompanied by a signed contract substantially in the form of the Asset Purchase Agreement, and marked to show any changes made to the Asset Purchase Agreement; and

2

(f) accompanied by a good faith cash deposit in an amount of at least $6 million to be deposited with Questex Media Group, Inc., or at the Debtors direction, counsel to the Debtors, on or before the Bid Deadline (the "Good Faith Deposit");

A bid received from a Bidder before the Bid Deadline that meets the above requirements shall constitute a "Qualified Bid," and such Bidder shall constitute a "Qualified Bidder."

## Aggregate Bids.

Persons who collectively are referred to as a "Qualified Bidder" need not be Affiliated Persons and need not act in concert with one another and the Debtors may aggregate separate bids from unaffiliated persons to create one Qualified Bid from one or more bidders even if such bidders would not otherwise individually be Qualified Bidders; provided, however, that all bidders shall remain subject to the provisions of 11 U.S.C. § 363(n) regarding collusive bidding and the Debtors shall notify all Qualified Bidders, including Purchaser, of any such aggregated Qualified Bidder and provide copies of such aggregated Qualified Bids.

## Auction

If more than one Qualified Bid is received by the Bid Deadline (other than the Asset Purchase Agreement), the Debtors in consultation with the Committee will conduct an auction (the "Auction") to determine the highest and best Qualified Bid. This determination shall take into account any factors the Debtors reasonably deem relevant to the value of the Qualified Bid to the estate, including, *inter alia*, the following: (i) the amount and nature of the consideration; (ii) the proposed assumption of any liabilities, if any; (iii) the ability of the Qualified Bidder to close the proposed Transaction; (iv) the proposed closing date and the likelihood, extent and impact of any potential delays in closing; (v) any purchase price adjustments; and (vi) the impact of the Transaction on any actual or potential litigation (collectively, the "Bid Assessment Criteria"). If no Qualified Bid (other than the Asset Purchase Agreement) is received by the Bid Deadline, the Debtors may determine not to conduct the Auction.

The Auction shall take place at 11:00 a.m. (prevailing Eastern time) on November 20, 2009, at the offices of Debtors' counsel, Kirkland & Ellis LLP, at 601 Lexington Avenue, New York, New York 10022 or such later time on such day or other place as the Debtors shall notify all Bidders who have submitted Qualified Bids. The Auction shall be conducted according to the following procedures:

(a) The Debtors Shall Conduct the Auction.

The Debtors and their professionals shall direct and preside over the Auction. At the start of the Auction the Debtors shall describe the terms of the Asset Purchase Agreement or, in the event a higher and better Bid is received, such Qualified Bid (the "Auction Baseline Bid").

All Bids made thereafter shall be Overbids (as defined below), and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all Bidders who have submitted Qualified Bids. The Debtors shall maintain a transcript of all bids made and announced at the Auction, including the Auction Baseline Bid and all Overbids.

No bids shall be considered by the Debtors unless the party submitting the Bid has submitted a Qualified Bid and participates in the Auction.

(b) Terms of Overbids.

An "Overbid" is any bid made at the Auction subsequent to the Debtors' announcement of the Auction Baseline Bid. To submit an Overbid for purposes of this Auction, a Bidder must comply with the following conditions:

(i) Minimum Overbid Increment.

3

Any Overbid after the Auction Baseline Bid shall be made in increments of at least $500,000.

(ii)     Remaining Terms are the Same as for Qualified Bids.

Except as modified herein, an Overbid must comply with the conditions for a Qualified Bid set forth above, *provided, however,* that the Bid Deadline shall not apply. Any Overbid must remain open and binding on the Bidder until and unless the Debtors accept a higher Overbid.

To the extent not previously provided (which shall be determined by the Debtors), a Bidder submitting an Overbid must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors) demonstrating such Bidder's ability to close the Competing Transaction proposed by such Overbid.

(iii)    Announcing Overbids.

The Debtors shall announce at the Auction the material terms of each Overbid, the basis for calculating the total consideration offered in each such Overbid and the resulting benefit to the Debtors' estates based on, *inter alia,* the Bid Assessment Criteria.

(iv)    Consideration of Overbids.

The Debtors in consultation with the Committee reserve the right, in their reasonable business judgment to make one or more adjournments in the Auction to, among other things: facilitate discussions between the Debtors and individual Bidders; allow individual Bidders to consider how they wish to proceed; and give Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors in their reasonable business judgment may require, that the Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed Competing Transaction at the prevailing Overbid amount.

(c)     Backup Bidder.

Notwithstanding anything in the Bidding Procedures to the contrary, if an Auction is conducted, the party with the next highest or otherwise best Qualified Bid at the Auction, as determined by the Debtors, in the exercise of their business judgment, shall be required to serve as a backup bidder (the "Backup Bidder"). The Backup Bidder shall be required to keep its initial Bid (or if the Backup Bidder submitted one or more Overbids at the Auction, its final Overbid) (the "Backup Bid") open and irrevocable until the earlier of 5:00 p.m. (prevailing Eastern Time) on the date that is 30 Days after the date of the Auction (the "Outside Backup Date") or the closing of the transaction with the Successful Bidder. Following the Sale Hearing, if the Successful Bidder fails to consummate an approved transaction, because of a breach or failure to perform on the part of such Successful Bidder, the Debtors may designate the Backup Bidder to be the new Successful Bidder, and the Debtors will be authorized, but not required, to consummate the transaction, with the Backup Bidder without further order of the Bankruptcy Court. In such case, the defaulting Successful Bidder's deposit shall be forfeited to the Debtors, and the Debtors specifically reserve the right to seek all available damages from the defaulting Successful Bidder. The deposit of the Backup Bidder shall be held by the Debtors until the earlier of 2 business days after (a) the closing of the transaction with the Successful Bidder and (b) the Outside Backup Date.

(d)     Additional Procedures.

The Debtors may announce at the Auction additional procedural rules that are reasonable under the circumstances (*e.g.,* the amount of time to make subsequent Overbids) for conducting the Auction so long as such rules are not inconsistent with these Bidding Procedures.

(e)     Consent to Jurisdiction as Condition to Bidding.

4

The Purchaser, all Qualified Bidders and all Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Asset Purchase Agreement, the Auction or the construction and enforcement of any Competing Transaction Documents.

(f)     Closing the Auction.

The Auction shall continue until there is only one Qualified Bid that the Debtors determine in their reasonable business judgment, after consultation with their financial and legal advisors, is the highest and best Qualified Bid at the Auction (the "Successful Bid" and the Bidder submitting such Successful Bid, the "Successful Bidder"). In making this decision, the Debtors, in consultation with their financial and legal advisors, shall consider the Bid Assessment Criteria. The Auction shall not close unless and until all Bidders who have submitted Qualified Bids have been given a reasonable opportunity to submit an Overbid at the Auction to the then-existing Overbid and the Successful Bidder has submitted fully executed Transaction Documents memorializing the terms of the Successful Bid.

The Sellers shall promptly inform Purchaser of all Qualified Bids and any information received related to the terms and conditions of such Qualified Bids;

Purchaser shall have the opportunity to increase its offer to a level at least $500,000 in excess of any Qualified Bid to be eligible to become the starting bid at the auction (the "Auction") contemplated by the Bidding Procedures Order ("Starting Auction Bid");

The Sellers shall evaluate all Qualified Bids received and shall determine which Qualified Bid reflects the highest or best offer as the Starting Auction Bid for all of the Purchased Assets and the Transferred Equity Interests. The Seller shall announce their determination of the Starting Auction Bid on or before the commencement of the Auction;

In the event that the Sellers determine in good faith that they have not received a Qualified Bid by the Bid Deadline that is a higher or better bid than the one represented by the Asset Purchase Agreement, the Sellers shall seek approval of the Asset Purchase Agreement at the Approval Hearing without conducting an Auction and without further motion or adjournment without the written consent of Purchaser.

### Sale Hearing

The Debtors will seek a hearing (the "Sale Hearing") on or before November 24, 2009, at which the Debtors will seek approval of the Transaction with the Successful Bidder. Objections to the sale of the Purchased Assets and Transferred Equity Interests to the Successful Bidder or Backup Bidder must be filed and served so that they are actually received by the Debtors no later than 4:00 p.m. prevailing Eastern Time on November 17, 2009.

### Return of Good Faith Deposit

The Good Faith Deposits of all Qualified Bidders shall be held in one or more interest-bearing escrow accounts by the Debtors, but shall not become property of the Debtors' estate absent further order of the Court. The Good Faith Deposits of any Qualified Bidder that is neither the Successful Bidder nor the Backup Bidder shall be returned to such Qualified Bidder not later than two (2) business days after the Sale Hearing. The Good Faith Deposit of the Backup Bidder shall be returned to the Backup Bidder on the date that is the earlier of (a) the closing of the transaction with the Successful Bidder and (b) the Outside Backup Date. Upon the return of the Good Faith Deposits, their respective owners shall receive any and all interest that will have accrued thereon. If the Successful Bidder timely closes the winning transaction, its Good Faith Deposit shall be credited towards its purchase price.

### Notice of Sale Hearing, Auction, Bidding Procedures, and Objection Dates

Not later than five (5) days after entry of the Bidding Procedures Order, the Debtors will cause the Auction and Sale Notice, in a form substantially similar to the form attached as Exhibit C to the Bidding Procedures Order,

5

to be sent by first-class mail, postage-prepaid, to (a) all entities that claim any interest in or lien on the Assets; (b) all parties to executory contracts and unexpired leases subject to the Transaction; (c) all governmental taxing authorities that have, or as a result of the sale of the Assets may have, claims, contingent or otherwise, against the Debtors; (d) all parties that filed requests for notices under Bankruptcy Rule 9010(b) or were entitled to notice under Bankruptcy Rule 2002; (e) all known creditors (whether liquidated, contingent or unmatured) of the Debtors; (f) all interested governmental, pension, and environmental entities; (g) the Office of the United States Trustee; and (h) all entities that have, within the past 12 months, expressed to the Debtors an interest in purchasing the Assets.

Not later than five (5) business days after entry of the Bidding Procedures Order, the Debtors will cause the Auction and Sale Notice, in a form substantially similar to the form attached as Exhibit C to the Bidding Procedures Order, to be published in the national edition of The Wall Street Journal as to be determined by Debtors, pursuant to Bankruptcy Rule 2002(l). Such publication notice shall be sufficient and proper notice to any other interested parties, including those whose identities are unknown to Debtors.

Further, to facilitate the sale, assumption, and assignment of any Purchased Contracts, the Debtors will serve, via first class mail, a notice (the "Cure Notice"), similar to the form attached as Exhibit B to the Bidding Procedures Order, not later than five (5) days after entry of the Bidding Procedures Order on each counterparty to a Purchased Contract. If the Purchaser is not the Successful Bidder, and an alternative Successful Bidder is seeking to have certain Purchased Contracts assumed and assigned as part of an alternative transaction, the Debtors will provide financial information for the alternative bidder to all non-debtor parties to such Purchased Contracts immediately following the Auction via facsimile or Federal Express.

The Debtors will attach to the Cure Amount Notice their calculation of the undisputed cure amounts that they believe must be paid to cure all defaults under all Purchased Contracts (the "Cure Amount"). If no amount is listed on the Cure Amount Notice, the Debtors believe that there is no Cure Amount. Unless the non-debtor party to a Purchased Contract files an objection (the "Cure Amount Objection") to their scheduled Cure Amount by November 17, 2009, at 4:00 p.m. (Eastern Time) and serves the objection on (a) counsel for the Debtors, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654, Attn.: James A. Stempel and Erik W. Chalut; (b) co-counsel for the Debtors, Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, Delaware 19801, Attn.: Michael Nestor; (c) counsel to the Purchaser and to the DIP Agent, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn.: Joseph H. Smolinsky; and (d) counsel to the Official Committee of Unsecured Creditors, Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, New York 10104-0050, Attn: Lorenzo Marinuzzi, Esq., David Capucilli, Esq. and Erica J. Richards, Esq., then the Debtors may assume and assign such contract to the Purchaser or the Successful Bidder and such non-debtor party shall (i) be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Purchased Contract, and the Debtors shall be entitled to rely solely on the Cure Amount; and (ii) be forever barred and estopped from asserting or claiming against the Debtors, the Purchaser, or such other Successful Bidder or any other assignee of the relevant Purchased Contract that any additional amounts are due or defaults exist under such Purchased Contract. In addition, non-debtor parties to any Purchased Contract must file and serve objections, if any, the adequate assurance of future performance under the Purchased Contract (if and as assumed) so as to be received by the foregoing parties by November 17, 2009, at 4:00 p.m. (Eastern Time).

If a Cure Amount Objection is timely filed, the Cure Amount Objection must set forth (a) the basis for the objection; (b) with specificity, the amount the party asserts as the Cure Amount; and (c) appropriate documentation in support of the Cure Amount.

Hearings on Cure Amount Objections (and objections to the adequate assurance of future performance under the Purchased Contract (if and as assumed)) may be held (a) at the Sale Hearing or (b) on such other date that the Debtors determine in their sole discretion; provided, however, that if the subject Purchased Contract is assumed and assigned, notwithstanding a pending Cure Amount Objection, the Cure Amount asserted by the objecting party (or such lower amount as may be fixed by this Court) shall be deposited and held in a segregated account by the Debtors or the Successful Bidder or any other assignee pending further order of this Court or mutual agreement of the parties, as applicable.

6

The Debtors' decision to assume and assign Purchased Contracts shall be subject to Court approval and consummation of the Transaction. Absent consummation of the Transaction, each of the Purchased Contracts shall neither be deemed assumed nor assigned and shall in all respects be subject to further administration under the Bankruptcy Code.

Except to the extent otherwise provided in the Asset Purchase Agreement or the agreement with the Successful Bidder, subject to any prepetition cure amount payments, the assignee of any assumed Purchased Contract will not be subject to any liability to the Purchased Contract counterparty that accrued or arose before the closing date of the Transaction, and the Debtors shall be relieved of all liability accruing or arising thereafter pursuant to section 365(k) of the Bankruptcy Code.

Objections, if any, to the relief requested in the Proposed Sale Order, including any objections under section 365(b)(1)(C) of the Bankruptcy Code, must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Bankruptcy Rules; (c) be filed with the Clerk of the Bankruptcy Court for the District of Delaware, 3rd Floor, 824 Market Street, Wilmington, Delaware 19801, on or before 4:00 p.m. (Eastern Time) on November 17, 2009; and (a) counsel for the Debtors, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654, Attn.: James A. Stempel and Erik W. Chalut; (b) co-counsel for the Debtors, Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, Delaware 19801, Attn.: Michael Nestor; (c) counsel to the Purchaser and to the DIP Agent, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn.: Joseph H. Smolinsky; and (d) counsel to the Official Committee of Unsecured Creditors, Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, New York 10104-0050, Attn: Lorenzo Marinuzzi, Esq., David Capucilli, Esq. and Erica J. Richards, Esq., *provided, however*, if the Purchaser is not the Successful Bidder and an alternative Successful Bidder is seeking to have certain unexpired leases, license agreements, and executory contracts assumed and assigned as part of an alternative transaction, the non-debtor parties to such unexpired leases, license agreements, and executory contracts shall have until 4:00 p.m. the day prior to the Sale Hearing to raise objections under section 365(b)(1)(C) of the Bankruptcy Code. The failure of any person to timely file its objection shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Motion or the Debtors' assumption and assignment of any Purchased Contract or the consummation of the Transaction (or any alternative agreement entered into with the Successful Bidder), including the transfer of the Assets free and clear of all liens, claims, encumbrances and other interests (other than those provided for expressly in the Asset Purchase Agreement or alternative purchase agreement entered into with the Successful Bidder).

The Sale Hearing to be held before this Court has been scheduled for [November 24, 2009]. The Sale Hearing may be adjourned, from time to time, without further notice to creditors or other parties-in-interest other than by announcement of said adjournment before this Court or on this Court's calendar on the date scheduled for said hearing.

7

# EXHIBIT 1

## Confidentiality Agreement

_____, 2009

## CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT

## PRIVILEGED AND CONFIDENTIAL

Name
Company
Address
Address

Dear _____:

      This Confidentiality and Non-Disclosure Agreement (this "Agreement") is made and entered into as of this ___ day of October, 2009, by and between Questex Media Group, Inc., a Delaware corporation (the "Company") and the undersigned ("Recipient").

      WHEREAS, for the purpose of discussing, evaluating, and negotiating a potential sale of the Company and substantially all of its assets (the "Potential Sale Transaction"), the Company may provide or disclose to the Recipient certain information about the Company, and/or its affiliates, whether in writing, orally or otherwise, or provide the Recipient and its Representatives (as hereinafter defined) access to certain information about the business, financial condition, operations, assets and liabilities of the Company and its affiliates (the "Information"); and

      NOW THEREFORE, in consideration of the covenants and conditions set forth herein, it is agreed as follows:

      1.    As a condition to, and in consideration of, the willingness of the Company and its affiliates to participate in discussions regarding a Potential Sale Transaction and to permit the disclosure of Information to the Recipient and/or its Representatives, the Company requires the Recipient's agreement to the terms and conditions of this Agreement.

      2.    Recipient hereby acknowledges that it will be furnished with Confidential Information (as defined below) from the Company and/or its Representatives relating to the Company and/or any of its affiliates, which will include information about a Potential Sale Transaction and may include, without limitation, information relating to the Company's financial condition that is not generally known, or has not been disclosed, to the public. All Confidential Information is and shall remain the sole property of the Company. Recipient and its Representatives shall make no use of the Confidential Information, other than as provided for herein, and shall not disclose Confidential Information to any third party, except as disclosure shall be necessary as required by law or as otherwise permitted herein. Recipient and its Representatives shall not disclose to any person either the fact that discussions or negotiations have taken or may take place concerning a Potential Sale Transaction, or any of the terms, conditions or other facts with respect to any such Potential Sale Transaction, including, without limitation, the status thereof, the existence and terms of this Agreement and the fact that the

      

Confidential Information has been made available to the Recipient. Without limiting any liability of the Representatives, Recipient will be responsible for any action or inaction by its Representatives that would constitute a breach of this Agreement as if such Representatives were signatories hereto, except for those of its Representatives who have agreed with the Company in writing to be bound by the terms of this Agreement to the Company's benefit.

3.      For purposes of this Agreement, "Confidential Information" shall mean and include, without limitation, (a) all information designated confidential and proprietary by the Company and which the Company has provided to Recipient and its Representatives, or which the Recipient learns from the Company or any of the Company's Representatives, in any case, on or after the date hereof, and (b) the contemplation of, and any Information, documentation, discussions and negotiations relating to, a Potential Sale Transaction, but shall not include, in any case, Information which (i) is available to the public or the Company's other security holders that the Recipient reasonably believes are not under confidentiality restrictions with regard to that Information, (ii) becomes available to the public or the Company's other security holders that the Recipient reasonably believes are not under confidentiality restrictions with regard to that Information other than as a result of a disclosure by Recipient or its Representatives in breach of this Agreement, or (iii) was in the Recipient's possession prior to the date hereof or was available or becomes available to Recipient or its Representatives from a source other than the Company or the Company's Representatives, *provided* that to Recipient's knowledge, such source obtained the Information on a non-confidential basis and is not prohibited from disclosing such Information by a contractual, legal or fiduciary obligation to the Company.

4.      Confidential Information may be written, recorded, or otherwise fixed in or on any medium, electronically communicated, or orally or visually communicated to Recipient and its Representatives. Confidential Information specifically includes, but is not limited to, any documents, records or information concerning the business, customers, clients, suppliers, consultants or affairs (financial, securities, regulatory or otherwise) of the Company and/or any of its affiliates. Confidential Information also includes, without limitation, marketing and development plans, business plans, financial information, customer lists, and other similar information in each case related to the Transaction that is proprietary and/or confidential to the Company.

5.      As used in this Agreement, Confidential Information shall include all Information, whether (a) prepared by the Company and/or its affiliates, any of their respective Representatives or otherwise or gathered by inspection, (b) in written, oral, electronic or other form, (c) identified as "confidential" or otherwise, or (d) prepared prior to, on or after the date of this Agreement, that is furnished to the Recipient or any of its Representatives by or on behalf of the Company and/or its affiliates, regardless of the manner or medium in which such Confidential Information is furnished, including all Information and documentation which Company or any of its affiliates is obligated to treat as confidential pursuant to any course of dealing or any agreement to which the Company or any of its affiliates is a party, all Information and documentation relating to the financial, tax, accounting and other Information of the Company or any of its affiliates regarding business operations, prospects, value and/or structure, marketing practices and techniques, business strategies and capabilities, business plans, and relationships with customers, suppliers, principals, employees, financing sources, contracting counterparties and others, and any Information that is a trade secret within the meaning of applicable trade secret law and other

2

documentation and materials prepared by the Recipient or any of its Representatives, containing or based in whole or in part on any Information furnished by the Company or its affiliates or any of their respective Representatives. Confidential Information also shall include (a) the fact that the parties are considering the Potential Sale Transaction, (b) any discussions, negotiations and investigations regarding the terms, conditions or other facts with respect to the Potential Sale Transaction, including the status thereof and the existence and terms of this Agreement, and (c) that the Confidential Information has been made available to the Recipient.

6.      The Recipient shall use, and shall cause its Representatives to use, the Confidential Information solely in connection with its analysis and evaluation of the Potential Sale Transaction (the "Permitted Purpose"), and for no other purpose. Furthermore, the Recipient shall not, and shall cause its Representatives not to, directly or indirectly, at any time whether or not the Company or any of its affiliates, on the one hand, and the Recipient, on the other hand, enter into a Potential Sale Transaction, disclose any Confidential Information to any person (other than the Company) in any manner, or permit or assist any person (other than the Company) to use any Confidential Information, except that the Recipient may disclose Confidential Information to its Representatives who need to know such information for the sole purpose of assisting, and solely to the extent necessary to permit such Representatives to assist the Recipient with the Permitted Purpose; *provided* that the Recipient shall require each such Representatives to be bound by the terms of this Agreement to the same extent as if they were parties to this Agreement, and the Recipient shall be liable to the Company for any action or omission prohibited under this Agreement by any of its Representatives.

7.      "Representatives" of any person shall mean its affiliates and the directors, officers, employees, controlling persons, representatives, agents and advisors of such person and its affiliates (including financial advisors, counsel and accountants). An "affiliate" of any person shall mean any other person that directly or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, the first person. For purposes of this definition, "control" of a person means the possession of power to direct or cause the direction of management and policies of such person, whether through ownership of voting securities, by contract or otherwise. The term "person" as used in this Agreement will be interpreted broadly to include the media (electronic, print or otherwise), the Internet, any governmental representative or authority or any corporation, company, limited liability company, enterprise, association, partnership, group or other entity or individual.

8.      Without limiting the generality of the foregoing, the Recipient agrees that neither it nor any of its Representatives shall directly or indirectly discuss with or offer to any third party any position (debt, equity, co-investor, joint venture or otherwise) or potential position in any Potential Sale Transaction or any other form of direct or indirect participation in any Potential Sale Transaction or any joint acquisition by the Recipient and such third party without the prior written consent of the Company. Recipient further represents and acknowledges that as of the date hereof, no agreement, arrangement or any other understanding exists between the Recipient and its Representatives on the one hand and any potential or existing debt or equity sources, co-investors, joint venture counterparties or otherwise regarding a position or potential position in any Potential Sale Transaction or any other form of direct or indirect participation in any Potential Sale Transaction.

3

9.    In the event that the Recipient or any of its Representatives is legally required, based on the written opinion of Recipient's outside legal counsel, to disclose any Confidential Information, the Recipient will give the Company prompt written notice of such requirement so that the Company may seek an appropriate protective order or other remedy, and/or waive compliance with certain provisions of this Agreement, and the Recipient will cooperate with the Company to obtain such protective order. In the event that such protective order or other remedy is not obtained or the Company waives compliance with the relevant provisions of this Agreement, the Recipient will furnish only that portion of the Confidential Information that is legally required to be disclosed, based on the written opinion of Recipient's outside legal counsel, and use its best efforts to obtain assurances that confidential treatment will be accorded to such Confidential Information.

10.    Except as otherwise required by law or regulation, within fifteen (15) days after being so requested in writing by the Company (which request made be made by the Company at any time and from time to time), the Recipient shall, and shall cause its Representatives to, either return to the Company or destroy all Confidential Information and all documents, materials or other items containing Confidential Information, without retaining any copies, summaries or extracts thereof, except as otherwise required by law or regulation, and shall certify such return and/or destruction in writing to the Company by the authorized officer or officers supervising such destruction within such 15-day period. Compliance with this paragraph shall not relieve the Recipient of its other obligations under this Agreement.

11.    For the two year period following the date of this Agreement, the Recipient shall not, and shall cause its affiliates and each of their respective directors, officers, employees or controlling persons not to, directly or indirectly solicit for hire or engagement, or hire or engage, any individual who is now or was during the six months prior to such proposed solicitation, hire, or engagement, engaged or employed by the Company or any of its affiliates; *provided, however*, that the Recipient may make general solicitations through public advertisements in the ordinary course of business and consistent with past practice and employ persons in connection with such general solicitations.

12.    The Recipient acknowledges, on behalf of itself and its Representatives, that neither the Company nor its Representatives makes any representations or warranties, express or implied, as to the accuracy or completeness of the Confidential Information, that neither the Company nor its Representatives shall have any liability whatsoever to Recipient or its Representatives or any other person as a result of the use of the Confidential Information or any errors therein or omissions therefrom by virtue of this Agreement and that the Recipient and its Representatives shall assume full responsibility for all conclusions derived from the Confidential Information. Neither this Agreement nor disclosure of any Confidential Information to the Recipient or its Representatives shall be deemed by implication or otherwise to vest in the Recipient or its Representatives rights in or to the Confidential Information, other than the right to use such Confidential Information solely for the Permitted Purpose.

13.    The Recipient agrees that all contacts or communications by the Recipient or its Representatives with the Company regarding the subject matter of this Agreement, including as to any Confidential Information or request for Confidential Information or with respect to any Potential Sale Transaction, shall be made only in accordance with written instructions provided

4

by the Company or its Representatives. Accordingly, the Recipient agrees not to directly or indirectly contact or communicate with any other executive or employee of the Company concerning Confidential Information or the Potential Transaction, or to seek any information in connection therewith from any such person without the prior written consent of Company.

14. The Recipient acknowledges that the covenants contained in this Agreement are fundamental for the protection of the legitimate business and proprietary interests of the Company and its affiliates and that in the event of any violation by the Recipient of any such covenants, remedies at law would be inadequate. In the event of any violation or attempted violation of this Agreement, the Company and its affiliates shall be entitled to specific performance and injunctive relief or other equitable remedy without any showing of irreparable harm or damage, and the Recipient hereby waives, and shall cause its Representatives to waive, any requirement for the securing or posting of any bond or other security in connection with any such remedy. The Recipient also agrees to indemnify and hold harmless the Company (on its own behalf and on behalf of its affiliates) against and to pay to any loss or expense incurred by the Company or any of its affiliates by reason of or arising out of any breach by the Recipient of the obligations in this Agreement, including any costs, expenses or other liabilities incurred by the Company or any of its affiliates in connection with the enforcement of any of its rights or the obligations hereunder. Such remedies shall not be deemed to be the exclusive remedies for any breach of this Agreement but will be in addition to all other remedies available at law or in equity to the Company or any of its affiliates. Any trade secrets included in the Confidential Information will also be entitled to all of the protections and benefits under applicable trade secret law. The Recipient hereby waives, and shall use all reasonable efforts to cause its Representatives to waive, any requirement that the Company or any of its affiliates submit proof of the economic value of any trade secret or post a bond or other security.

15. The Recipient understands that, except as required by the Bankruptcy Court or other applicable law, (a) the Company and its Representatives shall conduct the process for the Potential Sale Transaction as they in their sole discretion shall determine (including negotiating with any prospective purchaser, entering into definitive agreements without prior notice to the Recipient or any other person, and discontinuing discussions or negotiations with the Recipient or any other party at any time for any reason or no reason), (b) any procedures relating to such a Potential Sale Transaction may be changed at any time without notice to the Recipient, (c) the Company shall have the right to reject or accept any potential purchaser, proposal or offer, for any reason whatsoever, in its sole discretion, and (d) neither the Recipient nor any of its Representatives shall have any claims whatsoever against the Company or its Representatives arising out of or relating to the Potential Sale Transaction (other than those against the parties to a definitive agreement with the Recipient in accordance with the terms thereof). The Recipient and the Company acknowledge and agree that, except as required by the Bankruptcy Court or other applicable law, this Agreement is entered into with the express understanding that neither the Company nor the Recipient is obligated to enter into or to commence or continue any discussions or negotiations pertaining to the entry into any Potential Sale Transaction, and that no such obligation shall arise unless and until a definitive agreement relating to a Potential Sale Transaction is executed and delivered by the parties.

16. The Recipient acknowledges that it and its Representatives may receive material non-public information in connection with the Company and/or the Potential Sale Transaction

5

and that the Recipient is aware (and will so advise its Representatives) that the federal and state securities laws and other applicable laws impose restrictions on purchasing, selling, engaging in transactions or otherwise trading in securities, bank debt, instruments and interests of the Company or any other person or entity or communicating any such information to any other person.

17. This Agreement shall be governed by and construed in accordance with the substantive laws of the State of Delaware. If, for any reason, any court of competent jurisdiction determines it is impossible to so construe any provision of this Agreement and holds that provision to be invalid, all other provisions of this Agreement shall remain in full force and effect. This Agreement was negotiated by sophisticated parties at arms' length, and neither party hereto shall be construed as the drafting party against which the Agreement could be construed. The Recipient hereby irrevocably and unconditionally consents to submit to the non-exclusive jurisdiction of the courts of the State of Delaware for any actions, suits or proceedings arising out of or relating to this Agreement and the transactions contemplated hereby (and the Recipient agrees not to commence any action, suit or proceeding relating thereto except in such courts, and further agrees that service of any process, summons, notice or document by U.S. registered mail or by express courier such as Federal Express to the Recipient's address set forth in the signature pages below shall be effective service of process for any action, suit or proceeding brought against the Recipient in any such court). The Recipient hereby irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement or the transactions contemplated hereby in the courts of the State of Delaware, and hereby further irrevocably and unconditionally waives and agrees not to plead or claim in any such court that any such action, suit or proceeding brought in any such court has been brought in an inconvenient forum.

18. This Agreement shall not be assignable by the Recipient without the consent of the Company. This Agreement shall be binding upon, inure to the benefit of, and be enforceable by and against the successors and permitted assigns of each party to this Agreement

19. The provisions of this Agreement shall be binding upon any person currently or at any future time controlling, controlled by or under common control with the Recipient, and the Recipient shall be liable to the Company for any action or omission prohibited hereunder by any such person.

20. Neither the failure nor any delay by the Company in exercising any right, power or privilege under this Agreement will operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any right, power or privilege hereunder. The rights, remedies, powers and privileges herein provided are cumulative and not exclusive of any rights, remedies, powers and privileges provided by law. If any provision of this Agreement is found to violate any statute, regulation, rule, order or decree of any governmental authority, court, agency or exchange, such invalidity shall not be deemed to affect any other provision hereof or the validity of the remainder of this agreement, and such invalid provision shall be deemed deleted from this Agreement to the minimum extent necessary to cure such violation.

6

21.     Any amendment or modification of the terms and conditions set forth herein or any waiver of such terms and conditions must be agreed to in a writing signed by the Company and the Recipient.  This Agreement may be executed in counterparts, each of which will be deemed an original, but all of which together will constitute one and the same agreement. Signatures to this Agreement transmitted by facsimile transmission, by electronic mail in "portable document format" (".pdf") form, or by any other electronic means intended to preserve the original graphic and pictorial appearance of a document, will have the same effect as physical delivery of the paper document bearing the original signature.

22.     This Agreement contains the entire agreement and supersedes all prior agreements and understandings, both written and oral, between the parties with respect to the subject matter hereof and thereof.  Whenever used in this Agreement, "including" or any derivation thereof shall be deemed to be followed by the phrase "without limitation."

23.     Except as otherwise provided herein, the restrictions and covenants set forth herein shall terminate and be of no further force or effect upon the two year anniversary of this Agreement; *provided, however,* that with respect to Confidential Information which constitutes a trade secret under applicable law, the Recipient's obligations pursuant to this Agreement shall survive so long as the Confidential Information remains a trade secret.

DB02:8863854.2

068808.1001

IN WITNESS WHEREOF, the Company and the Recipient have executed this Agreement as of the date and year first written above.

QUESTEX MEDIA GROUP, INC.

**By:** _____
**Name:** _____
**Title:** _____

Received and consented to

this _____ day of _____, 2009.

_____

By: _____
Name: _____
Title: _____

DB02:8863854.2

068808.1001

## EXHIBIT B

**Cure Notice and Contract Assignment Notice**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| QUESTEX MEDIA GROUP, INC., et al.,[1] | ) Case No. 09-13423 (MFW) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |
| | ) **Re: Docket No. __** |

## NOTICE TO COUNTERPARTIES TO POTENTIALLY ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**PLEASE TAKE NOTICE** that on _____, 2009, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed a motion (the "Bidding Procedures and Sale Motion") with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

**PLEASE TAKE FURTHER NOTICE** that on _____, 2009, the Bankruptcy Court entered an order [Docket No. _____] (the "Bidding Procedures Order") approving Bidding Procedures (the "Bidding Procedures"), which set key dates, times and procedures related to the sale of substantially of the Debtors' assets (the "Purchased Assets and Transferred Equity Interests"). To the extent that there are any inconsistencies between the Bidding Procedures and the summary description of the terms and conditions contained in this Notice, the terms of the Bidding Procedures shall control.

## YOU ARE RECEIVING THIS NOTICE BECAUSE YOU OR ONE OF YOUR AFFILIATES IS A COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE LISTED BELOW WITH ONE OR MORE OF THE DEBTORS:[2]

| [Counterparty Name] | [Contract/Lease] | Cure Amount |
|---|---|---|

**Pursuant to the Bidding Procedures, the Debtors may assume the Executory Contract(s) or Unexpired Lease(s) listed above to which you are a counterparty.** The Debtors have conducted a review of their books and records and have determined that the cure amount for unpaid monetary obligations under such contract or lease is $[AMOUNT] (the "Cure Amount").[3] If you object to the proposed assumption or disagree with the proposed Cure

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Questex Media Group, Inc. (5500); FierceMarkets, Inc. (6826); InfoTrends, Inc. (0297); InfoTrends Research Group, Inc. (9131); Oxford Communication, Inc. (0786); Oxford Publishing, Inc. (6012); QMG Holdings, Inc. (3042); Questex Brazil, LLC (3187); and Show Events, Inc. (6352). The location of the corporate headquarters for Questex Media Group, Inc. and the service address for all of the Debtors is: 275 Grove Street, Suite 2-130, Newton, Massachusetts 02466.

[2] This Notice is being sent to counterparties to Executory Contracts and Unexpired Leases. This Notice is not an admission by the Debtors that such contract or lease is executory or unexpired.

[3] If the agreement listed above is an Unexpired Lease, this notice is subject to any cure amount procedures approved by the Bankruptcy Court and will be amended appropriately to reflect such relief.

Amount, you must file an objection with the Bankruptcy Court **by no later than November 17, 2009, 4:00pm (Eastern Time)** (the "Objection Deadline") and serve such objection on the following parties:

| KIRKLAND & ELLIS LLP | YOUNG CONAWAY STARGATT & TAYLOR, LLP |
|---|---|
| James A. Stempel | Michael R. Nestor |
| Erik W. Chalut | Donald J. Bowman, Jr. |
| 300 North LaSalle Street | Robert F. Poppiti, Jr. |
| Chicago, Illinois 60654 | 1000 West Street, 17th Floor |
| | Wilmington, Delaware 19801 |

*Co-Counsel to the Debtors*

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104-0050
Attn: Lorenzo Marinuzzi, Esq.
David Capucilli, Esq.
Erica J. Richards, Esq.

*Counsel to the Committee*

WEIL, GOTSHAL & MANGES
Joseph H. Smolinsky
767 Fifth Avenue
New York, New York 10153

*Counsel to the Purchaser and to the DIP Agent*

If a Cure Amount Objection is timely filed, the Cure Amount Objection must set forth (a) the basis for the objection; (b) with specificity, the amount the party asserts as the Cure Amount; and (c) appropriate documentation in support of the Cure Amount.

If no objection to the Cure Amount is filed by the Objection Deadline, you will be deemed to have stipulated that the Cure Amount as determined by the Debtors is correct and you shall be forever barred, estopped and enjoined from asserting any additional cure amount under the above-listed Executory Contract(s) and Unexpired Lease(s).Objections to Assumption and Assignment of Executory Contracts and Unexpired Leases. In connection with the Sale of the Purchased Assets and Transferred Equity Interests and pursuant to Bankruptcy Code § 365, the Debtors intend to assume and assign certain executory contracts and unexpired leases (collectively, the "Purchased Contracts") to the Successful Bidder, which may include curing any defaults under the Purchased Contracts (the "Cure Amounts").

**Objections to Assumption and Assignment of Executory Contracts and Unexpired Leases**. Objections to the proposed assumption and assignment of a Purchased Contract, including any objection relating to Cure Amounts and/or adequate assurances of future performance, must: (a) be in writing, (b) state with specificity the nature of such objection and alleged cure amount, including applicable and appropriate documentation in support of such alleged cure amount, (c) comply with applicable Bankruptcy Rules and Local Rules, and (d) be filed with the Bankruptcy Court and served so as to be actually received on or before the Cure Amount Objection Deadline (set forth above) by counsel for the Debtors, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654, Attn.: James A. Stempel, Erik W. Chalut no later than 4:00 p.m. (prevailing Eastern Time) on November 17, 2009.

If a counterparty to a Purchased Contract does not timely file and serve an objection by the Cure Amount Objection Deadline, such counterparty will be forever barred from objecting to the Debtors' proposed assumption and assignment of the Designated Contract; provided, however, that to the extent that counterparties receive a notice after the Closing Date (as defined in the Asset Purchase Agreement) that the Debtors intend to assume and assign their contract, the counterparty will have an opportunity to object to the proposed adequate assurance of future performance. If a counterparty to a Designated Contract files a timely objection and the parties are unable to

consensually resolve the objection, the Debtors or the objecting counterparty will request a hearing before the Court prior to the Sale Hearing.

DB02:8863854.2

068808.1001

# EXHIBIT C

## Bidding Procedures Notice

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| QUESTEX MEDIA GROUP, INC., et al.,[1] | ) | Case No. 09-13423 (MFW) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |
|  | ) | **Re: Docket No. __** |

## NOTICE OF (A) PROPOSED SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS AND (B) BIDDING PROCEDURES, AUCTION, AND SALE HEARING IN CONNECTION THEREWITH[2]

**PLEASE TAKE NOTICE** that Questex Media Group, Inc. and certain of its affiliates, as debtors in possession (collectively, the "Debtors") seek to sell (the "Sale") substantially all of their assets (collectively, the "Purchased Assets and Transferred Equity Interests") free and clear of all liens, claims, encumbrances and other interests (other than those provided for expressly in the Asset Purchase Agreement or alternative purchase agreement entered into with the Successful Bidder).

**PLEASE TAKE FURTHER NOTICE** that on _____, 2009 the Debtors filed a motion (the "Bidding Procedures and Sale Motion") [Docket No. ___] with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") seeking entry of an order (a) approving the bidding procedures in connection with the Sale of the Purchased Assets and Transferred Equity Interests; (b) scheduling an auction (the "Auction") and hearing (the "Sale Hearing") in connection with the Sale of the Purchased Assets and Transferred Equity Interests; and (c) approving the Asset Purchase Agreement.

**PLEASE TAKE FURTHER NOTICE** that on _____, 2009 the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order (the "Bidding Procedures Order") [Docket No. ___] approving, among other things, the bidding procedures proposed by the Debtors (the "Bidding Procedures"), and setting key dates and times relating to the Sale of the Purchased Assets and Transferred Equity Interests. As set forth in the Bidding Procedures, the Sale of the Purchased Assets and Transferred Equity Interests is subject to competing offers from any prospective qualified bidder. All interested potential bidders should carefully read the Bidding Procedures enclosed herein.[3]

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Questex Media Group, Inc. (5500); FierceMarkets, Inc. (6826); InfoTrends, Inc. (0297); InfoTrends Research Group, Inc. (9131); Oxford Communication, Inc. (0786); Oxford Publishing, Inc. (6012); QMG Holdings, Inc. (3042); Questex Brazil, LLC (3187); and Show Events, Inc. (6352). The location of the corporate headquarters for Questex Media Group, Inc. and the service address for all of the Debtors is: 275 Grove Street, Suite 2-130, Newton, Massachusetts 02466.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Bidding Procedures or the Bidding Procedures Order, as applicable.

[3] This notice is not intended to be an exhaustive description of the Bidding Procedures and does not modify in any way the Bidding Procedures.

**Information Concerning the Sale of the Purchased Assets and Transferred Equity Interests.** The Bidding Procedures set forth in detail the process by which the Debtors will consider competing bids with respect to the Sale of the Purchased Assets and Transferred Equity Interests, including the requirements for submitting a Qualified Bid (as defined in the Bidding Procedures). All interested parties are invited to make offers to purchase the Purchased Assets and Transferred Equity Interests in accordance with the terms of the Bidding Procedures and Bidding Procedures Order. The Bidding Procedures, Bidding Procedures Order and Bidding Procedures Motion may be obtained by contacting the Debtors' notice, and claims agent, Epiq Bankruptcy Solutions, LLC, (a) at its website at http://chapter11.epiqsystems.com/questex, (b) by writing to Questex Media Group, Inc., c/o Epiq Bankruptcy Solutions, LLC, 757 Third Avenue, 3rd Floor, New York, New York 10017, (c) by calling (646) 282-2400, or (d) for a fee via PACER at http://www.deb.uscourts.gov/.

**Key Dates and Objection Deadlines Regarding the Sale of Purchased Assets and Transferred Equity Interests.** The Debtors have been and will continue to market the Purchased Assets and Transferred Equity Interests in advance of the Auction. Pursuant to the Bidding Procedures Order, if the Debtors receive, by the Bid Deadline, one or more bids that meet the qualification standards set forth in the Bidding Procedures (a "Qualified Bid"), the Debtors will conduct an Auction for the sale of the Purchased Assets and Transferred Equity Interests. The Bidding Procedures Order also provides that the Debtors will conduct a Sale Hearing to confirm the results of the Auction (if any) and to approve the sale of the Purchased Assets and Transferred Equity Interests to the successful bidder (the "Successful Bidder"). The Auction will be conducted at the offices of the Debtors' counsel, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, or at another location as may be timely disclosed by the Debtors to all Qualified Bidders, at [__:__] _.m. (prevailing Eastern Time) on November 20, 2009 or such later date as may be agreed to by the Debtors and the DIP Agent. The Debtors reserve the right to change the date or the place of the Auction, and will notify Qualified Bidders if they do so. The following are certain key dates and objection deadlines parties in interest should be aware of with respect to the sale of the Purchased Assets and Transferred Equity Interests:

| KEY DATES | |
|---|---|
| **Bid Deadline** | November 18, 2009 at 4:00 p.m. (prevailing Eastern time) |
| **Auction** | November 20, 2009 at _:00 _.m. (prevailing Eastern time) |
| **Sale Hearing** | November 24, 2009 at _:00 _.m. (prevailing Eastern time) |
| **OBJECTION DEADLINES** | |
| **Sale Objection Deadline** | November 17, 2009 at 4:00 p.m. (prevailing Eastern time) |
| **Cure Amount Objection Deadline** | November 17, 2009 at 4:00 p.m. (prevailing Eastern time) |

At the Sale Hearing the Debtors will seek the entry of an order approving and authorizing the Sale of the Purchased Assets and Transferred Equity Interests to the highest and best offer at the Auction, on terms and conditions consistent with the submitted Asset Purchase Agreement, as may be amended and modified. The Sale Hearing may be adjourned or rescheduled without notice other than by an announcement of the adjourned date at the Sale Hearing.

**Objection to the Sale of Purchased Assets and Transferred Equity Interests.** Any objection to the Sale and/or the Sale Hearing must (a) be in writing, (b) state with specificity the nature of such objection, (c) comply with the applicable Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and (d) be filed with the Court and served upon (so as to be actually received) on or prior to the Sale Objection Deadline (set forth above), by the following parties (collectively, the "Notice Parties"):

2

| KIRKLAND & ELLIS LLP | YOUNG CONAWAY STARGATT & TAYLOR, LLP |
|---|---|
| James A. Stempel | Michael R. Nestor |
| Erik W. Chalut | Donald J. Bowman, Jr. |
| 300 North LaSalle Street | Robert F. Poppiti, Jr. |
| Chicago, Illinois 60654 | 1000 West Street, 17th Floor |
| | Wilmington, Delaware 19801 |

*Co-Counsel to the Debtors*

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104-0050
Attn: Lorenzo Marinuzzi, Esq.
David Capucilli, Esq.
Erica J. Richards, Esq.

*Counsel to the Committee*

WEIL, GOTSHAL & MANGES
Joseph H. Smolinsky
767 Fifth Avenue
New York, New York 10153

*Counsel to the Purchaser and to the DIP Agent*

**Objections to Assumption and Assignment of Executory Contracts and Unexpired Leases.** In connection with the Sale of the Purchased Assets and Transferred Equity Interests and pursuant to Bankruptcy Code § 365, the Debtors intend to assume and assign certain executory contracts and unexpired leases (collectively, the "Purchased Contracts") to the Successful Bidder, which may include curing any defaults under the Purchased Contracts (the "Cure Amounts").

Objections to the proposed assumption and assignment of a Purchased Contract, including any objection relating to Cure Amounts and/or adequate assurances of future performance, must: (a) be in writing, (b) state with specificity the nature of such objection and alleged cure amount, including applicable and appropriate documentation in support of such alleged cure amount, (c) comply with applicable Bankruptcy Rules and Local Rules, and (d) be filed with the Bankruptcy Court and served so as to be actually received on or before the Cure Amount Objection Deadline (set forth above) by counsel for the Debtors, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654, Attn.: James A. Stempel, Erik W. Chalut no later than 4:00 p.m. (prevailing Eastern Time) on November 17, 2009.

If a counterparty to a Purchased Contract does not timely file and serve an objection by the Cure Amount Objection Deadline, such counterparty will be forever barred from objecting to the Debtors' proposed assumption and assignment of the Designated Contract; provided, however, that to the extent that counterparties receive a notice after the Closing Date (as defined in the Asset Purchase Agreement) that the Debtors intend to assume and assign their contract, the counterparty will have an opportunity to object to the proposed adequate assurance of future performance. If a counterparty to a Designated Contract files a timely objection and the parties are unable to consensually resolve the objection, the Debtors or the objecting counterparty will request a hearing before the Court prior to the Sale Hearing.

**Notice of Injunction.** Other than as to the liabilities explicitly assumed under the Asset Purchase Agreement, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, all "persons" (as that term is defined in section 101(41) of the Bankruptcy Code) shall be enjoined from taking any action against the Purchaser, the purchaser's affiliates (as they existed immediately prior to the closing), or the Purchased Assets and Transferred Equity Interests to recover any claim which such "person" has solely against the Debtors or the Debtors' affiliates (as they exist immediately after the closing).

DB02:8863854.2                                                                      068808.1001

Wilmington, Delaware
Dated: [Date], 2009

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

Michael R. Nestor (DE Bar No. 3526)
Donald J. Bowman, Jr. (DE Bar No. 4383)
Robert F. Poppiti, Jr. (DE Bar No. 5052)
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone:      (302) 571-6600
Facsimile:      (302) 571-1253
Email:          mnestor@ycst.com
                dbowman@ycst.com
                rpoppiti@ycst.com

- and -

**KIRKLAND & ELLIS LLP**
James A. Stempel
Erik W. Chalut
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          james.stempel@kirkland.com
                erik.chalut@kirkland.com

Proposed Co-Counsel to the Debtors
and Debtors in Possession