**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re:* | ) |
| | ) Chapter 11 |
| | ) |
| Questex Media Group, Inc., <u>et al.</u>, | ) Case No. 09-13423 (MFW) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |
| | ) **Objection Deadline: November 17, 2009 at 4:00 p.m.** |
| | ) **Hearing Date: November 24th at 4:00 p.m.** |
| | ) |

**AFFIDAVIT OF KEVIN J. KADEN IN SUPPORT OF APPLICATION BY
THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ORDER
AUTHORIZING THE RETENTION AND EMPLOYMENT OF BDO
CONSULTING, A DIVISION OF BDO SEIDMAN, LLP NUNC PRO TUNC TO
OCTOBER 16, 2009, AS FINANCIAL ADVISOR PURSUANT TO SECTION 328
OF THE BANKRUPTCY CODE AND RULE 2016(b) OF THE FEDERAL RULES
<u>OF BANKRUPTCY PROCEDURE</u>**

STATE OF NEW YORK    )

                               ss:

COUNTY OF NEW YORK  )

        **KEVIN J. KADEN,** being duly sworn, deposes and says:

1.       I, Kevin J. Kaden, am a Certified Public Accountant, licensed under the laws of the State of New Jersey, a Certified Insolvency and Restructuring Advisor (CIRA), a Certified Financial Forensic (CFF), and a partner in the firm of BDO Seidman, LLP ("<u>BDO</u>" or "<u>my Firm</u>"), a New York registered limited liability partnership, a national accounting, tax and consulting firm consisting in part of certified public accountants, with offices located at 135 W. 50th Street, New York, New York, 10020 and other locations throughout the United States.

2.       Subject to this Court's approval of our retention, BDO proposes to provide financial advisory services to the Official Committee of Unsecured Creditors (the

"Committee") of Questex Media Group, Inc. et al. ("Questex" or the "Debtors").

Through a separate application, the Committee is seeking to employ Trenwith Group, LLC ("Trenwith"), BDO's affiliate investment bank, of which BDO is the majority owner. Although Trenwith and BDO will be working side-by-side, each firm's primary functions will remain distinct. BDO's role will focus on accounting, financial advisory services and analysis, while Trenwith will render investment banking, valuation and corporate finance services, as required or requested by the Committee. BDO and Trenwith have been retained in this manner by Official Committees of Unsecured Creditors in many other cases in this Court, including *In re Avado Brands, Inc. et al.,* Case No. 07-11276 (MFW), *In re CFM U.S. Corporation, et al.,* Case No. 08-10668 (KJC), *In re JHT Holdings, Inc. et al.,* Case No. 08-11267 (BLS), *In re Lang Holdings, Inc. et al.,* Case No. 09-12543 (KJC) and *In re Freedom Communications Holdings, Inc.,* *et al.,* Case No. 09-13046 (BLS), to name a few.

3.     Other than the initial communication between my firm and representatives of the Committee with respect to the retention of my firm in this case, to my knowledge, neither my firm nor any members of my firm had any business, professional or other connection with the Debtors, or any other party in interest, with regard to the Debtors or their estates.

4.     From time to time, in matters totally unrelated to the Debtors, BDO has and may currently be involved in matters with:

      a.     Morrison Foerster LLP

      b.     Pepper Hamilton LLP

      c.     Young Conaway Stargatt & Taylor, LLC

      c.      Kirkland & Ellis LLP

      d.      Miller Buckfire & Co.

      e.      Latham and Watkins LLP

      f.      Epiq Systems, Inc.

      g.      Ropes and Gray LLP

      h.      Burns & Levinson LLP

      i.      RSM McGladrey, Inc.

5.      To my knowledge, and subject to the disclosures listed in **Exhibit 1** of those creditors and other parties-in-interest, which list was made known to me to be the only significant creditors and other significant parties-in-interest in this matter, neither my firm nor any members of my firm have any business relationships with those parties which are or may be creditors of the Debtors, or any other party-in-interest herein except as specified below:

      (a)      BDO has performed and may be presently performing accounting, tax and/or consulting services for the following creditors or other parties-in-interest:

ACE American Insurance Co.
American Express
Bank of America
CDW
Cigna
Credit Suisse
Freeman Decorating Services, Inc.
General Electric Capital Corporation
Google, Inc.
Great American Insurance Co.
Image Entertainment, Inc.
Imperial Capital, LLC
Metlife

Ritz-Carlton
RSM McGladery
Wells Fargo & Co.
Xerox

Fees for each of these engagements represent less than 1% of BDO's annual revenues, and to my knowledge, relate to matters totally unrelated to the cases for which BDO is seeking to be engaged.

(b)     Moreover, as part of its practice, BDO appears in cases, proceedings and transactions involving many different creditors, shareholders, attorneys, accountants, financial consultants, investment bankers and other entities, some of which may be or represent claimants and parties-in-interest in this case. BDO does not represent any such entity, other than which has already been disclosed in connection with the pending case or have a relationship with any such entity or professional which would be adverse to the Committee, the Debtors, or their estates.

6.     From time to time, BDO has been retained and likely will continue to be retained by certain creditors of the Debtors, but it is the intention of my firm to use commercially reasonable efforts to limit any such engagements to matters unrelated to these chapter 11 cases.  BDO has undertaken a detailed search to determine, and to disclose, whether it represents or has represented any significant creditors, equity security holders, insiders or other parties-in-interest in any unrelated matters.  To the extent that I have been provided with the names of each of the persons and entities listed on Exhibit 1,

BDO has performed a review of potential connections and relationships between BDO and (i) the Debtors; (ii) Debtors' Affiliates; (iii) Debtors' Secured Lenders' Administrative Agents; (iv) Debtors' Contract Counterparties; (v) Debtors' Customers; (vi) Debtors' Debt Holders; (vii) Debtors' Insurers; (viii) Debtors' Landlords; (ix) Debtors' Lien Holders; (x) Debtors' Litigation Counterparties; (xi) Debtors' Officers and Directors; (xii) Debtors' Shareholders; (xiii) Debtors' Significant Vendors; (xiv) the Top 30 Largest Unsecured Creditors of the Debtor and members of the Committee; (xv) the Debtors' Utilities; and (xvi) all Professionals associated with these Cases. In connection therewith, BDO searched its internal database, sent out e-mails to all of its Partners and employees and investigated all responses to its search. Despite commercially reasonable efforts to identify and disclose BDO's connections with parties-in-interest in these cases, as made known to me in writing, because BDO has a large national practice and serves clients through over 30 offices and because the Debtors are a large enterprise with hundreds of creditors and other relationships, BDO is unable to state with certainty that every client representation or other connection has been disclosed. In this regard, if BDO discovers additional information that, in BDO's reasonable opinion requires disclosure, BDO will file a supplemental disclosure with the Court as promptly as possible.

7.     To the best of my knowledge, information and belief, BDO neither holds nor represents any interest adverse to the Debtors, or its estates, in the matters for which it is proposed to be retained. Accordingly, BDO believes that it is a "disinterested person," as defined in section 101(14) of the Bankruptcy Code and as modified by section 1107(b) of the Bankruptcy Code and as required by section 327(a). Therefore, I

submit that the Committee's employment of BDO would be in the best interests of the Debtors and their estates and creditors.

8.    In addition, to the best of my knowledge, BDO does not have any connection to the United States Trustee for Region 3, or any person employed in the office of the United States Trustee for Region 3, District of Delaware, outside of our role as a retained professional in other cases as required by Federal Rule of Bankruptcy Procedure 2014; and to the best of my knowledge, no one employed by my Firm is a relative of the Bankruptcy Judge in the above captioned case or the United States Trustee for Region 3 as required by Federal Rule of Bankruptcy Procedure 5002.

9.    BDO has extensive familiarity with the accounting practices in insolvency matters in the bankruptcy courts in the District of Delaware and in other states.

10.    The general nature of services that BDO will perform for the Committee in assisting the Committee may include, but are not limited to, the following as requested by the Committee and agreed to by BDO:

   (a)    Analyze the financial ramifications of any proposed transactions for which the Debtors seek Bankruptcy Court approval including, but not limited to, post petition financing, sale of all or a portion of the Debtors' assets, critical vendor payments, retention of management and/or employee incentive and severance plans;

   (b)    Perform liquidation analyses and evaluate best exit strategy;

   (c)    Perform forensic investigating services, as requested by the Committee and counsel, regarding pre-petition activities of the Debtors in order to identify potential causes of action, including investigating intercompany transfers, improvements in position, and fraudulent transfers;

   (d)    Analyze the financial operations of the Debtors pre and post-petition, as necessary;

(e)     Conduct any requested financial analysis including verifying the material assets and liabilities of the Debtors, as necessary, and their values;

(f)     Assist the Committee in its review of monthly statements of operations submitted by the Debtors;

(g)     Perform claims analysis for the Committee;

(h)     Assist the Committee in its evaluation of cash flow and/or other projections prepared by the Debtors;

(i)     Scrutinize cash disbursements on an on-going basis for the period subsequent to the commencement of these Cases;

(j)     Analyze transactions with insiders, related and/or affiliated companies;

(k)     Analyze transactions with the Debtors' financing institutions;

(l)     Attend meetings of creditors and conference with representatives of the creditor groups and their counsel;

(m)     Attend any auctions of the Debtors' assets; and

(n)     Perform other necessary services as the Committee or the Committee's counsel may request from time to time with respect to the financial, business and economic issues that may arise, including services related to the negotiation of any Chapter 11 plan of reorganization or liquidation.

11.     In accordance with section 504 of the Bankruptcy Code, no agreement or understanding exists between me, and, to my knowledge, between my firm or any other member or associate of my firm, on the one hand, and any other person, on the other hand, for the sharing of compensation as my firm may receive in connection with services rendered in these cases, nor will any division of fees prohibited by section 504 of the Bankruptcy Code be made by me, or, to my knowledge, any partner or associate of my firm.

12.     Any request by BDO for compensation for professional services rendered for the Committee shall be based upon the time expended to render such services and at billing rates commensurate with the experience of the person performing such services and will be computed at the hourly billing rates customarily charged by BDO for such services.  Expenses will be charged at actual costs incurred (and will include charges for copying, travel, telephone, computer rental, etc.).

13.     The hourly billing rates as of the date of this Affidavit are as follows, but subject to change in the ordinary course of BDO's business:

| | |
|---|---|
| Partners/Managing Directors | $500 to $800 per hour |
| Directors & Sr. Managers | $350 to $600 per hour |
| Managers | $275 to $395 per hour |
| Seniors | $200 to $350 per hour |
| Staff | $150 to $225 per hour |

14.     In connection with the submission of periodic billings, BDO will provide detailed descriptions for each professional of the services performed, and the time expended on the engagement for all relevant engagement activity categories.  In addition, reasonable out-of-pocket expenses, including travel, report production, delivery services, and other costs incurred in providing the services will be included, at actual cost, in the total amount billed.  In the normal course of business, BDO revises its regular hourly rates to reflect changes in responsibilities, increased experience, and increased costs of doing business.  Accordingly, BDO requests that the aforementioned rates be revised to the regular hourly rates, which will be in effect from time to time.  Changes in regular hourly rates will be noted on the invoices for the first time period in which the revised rates became effective.

14.     BDO intends to apply to the Court for the allowance of compensation for professional services rendered and reimbursement of expenses incurred in accordance with the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules of the District of Delaware and any orders entered by the Court.  BDO has agreed to accept as compensation such sums as may be allowed by the Court based upon the professional time spent, the rates charged for such services, the necessity of such services to the administration of the estates, the reasonableness of the time within which the services were performed in relation to the results achieved, and the complexity, importance and nature of the problems, issues or tasks addressed in these cases.  BDO understands that interim and final fee awards are subject to approval by the Court.

As set forth above, BDO respectfully requests that it be retained effective as of October 16, 2009 and all services rendered by BDO to the Committee from that date forward be deemed authorized pursuant to this Court's Order.

Dated: New York, New York
November __4__, 2009

_____
Kevin J. Kaden

Sworn and subscribed to before me
this __2__ day of November 2009.

_____
NOTARY PUBLIC

Nancy Ramos
Notary Public-State of NY
ID#: RA6093
Qualified in Queens
Commission Expires May 27, 2011